MICHAEL A. SMITH, Individually and as Administrator of the Estate of CRYSTAL MICHELLE SMITH, Deceased v. NATIONWIDE MUTUAL INSURANCE COMPANY

No. 8810SC1288

(Filed 20 February 1990)

1. **Declaratory Judgment Act § 4.3 (NCI3d) — refusal of insurer to state extent of UIM coverage — issue ripe for judicial resolution**

    Defendant's refusal to state the extent of the UIM coverage under two policies issued to plaintiff by defendant sparked the actual controversy between plaintiff and defendant which provided the basis for this suit, and there was no merit to defendant's contention that a judgment establishing the amount of damages for the insured's death had not yet been entered in the underlying wrongful death action, and, therefore, the extent of available underinsurance coverage was an issue not ripe for judicial resolution.

    **Am Jur 2d, Declaratory Judgments §§ 123, 124, 133.**

2. **Insurance § 69 (NCI3d) — household-owned vehicle exclusion — UIM coverage in two policies — no stacking allowed**

    The UIM coverages provided in two separate automobile insurance policies issued to the plaintiff insured could not be "stacked" to compensate him for the death of his daughter who was killed while driving a vehicle owned by the insured and the daughter, since the "household-owned vehicle" exclusion in one of the policies precluded UIM coverage for the daughter's death and therefore prevented "stacking."

    **Am Jur 2d, Automobile Insurance § 329.**

    Judge PHILLIPS dissenting.

APPEAL by defendant from order entered 11 August 1988 in WAKE County Superior Court by *Judge B. Craig Ellis*. Heard in the Court of Appeals 6 June 1989.

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Theodore B. Smyth, for plaintiff-appellee.*

*LeBoeuf, Lamb, Leiby & MacRae, by Peter M. Foley and H. Chalk Broughton, Jr., for defendant-appellant.*

BECTON, Judge.

This appeal presents the question whether the underinsured motorist ("UIM") coverages provided in two separate automobile insurance policies issued to the plaintiff-insured may be aggregated or "stacked" to compensate him for the death of his daughter who was killed while driving a vehicle owned by the insured and the daughter, given that the daughter and the vehicle were directly insured under only one of the policies. To answer this question, we must decide whether the so-called "family-member vehicle" or "household-owned vehicle" exclusion in one of the policies precludes UIM coverage for the daughter's death, and, therefore, prevents stacking. For the reasons that follow, we reverse the order granting summary judgment in favor of the insured, and remand the cause.

I

The two automobile insurance policies at issue in this declaratory judgment action were purchased by the plaintiff Michael A. Smith from the defendant Nationwide Mutual Insurance Company. The first policy (No. 61J097608, hereafter "Policy A") covers a 1977 Toyota owned by Mr. Smith and his daughter, Crystal Michelle Smith (now deceased). The "Declarations" section of Policy A lists both Mr. Smith and Crystal as named insureds. The second policy (No. 61E449873, "Policy B") covers a pickup truck and a station wagon, and lists only Mr. Smith as the named insured. Both policies provide, for each covered automobile, $100,000 per person bodily injury liability coverage and $100,000 UIM bodily injury coverage, with a per accident limit of $300,000. With the exception of the vehicles and insureds named in the Declarations section, the remaining terms of Policy A and Policy B are identical.

The liability coverage in the policies applies, in relevant part, to bodily injury or property damage caused by an automobile accident arising out of the "ownership, maintenance or use of *any*

auto" by the named insured or any family member residing with the named insured. (Emphasis added.) This seemingly broad liability coverage is narrowed by several important exclusions. The exclusion pertinent to this case, the "family member" or "household-owned vehicle" exclusion, states:

> We do not provide Liability Coverage for the ownership, maintenance or use of . . . [a]ny vehicle, *other than [the] covered auto* [listed in the Declarations], *which is . . . owned by [the named insured] [or] . . . which is . . . owned by any family member . . .*

(Emphasis added.) The medical payments coverage section of each policy contains essentially the same exclusion.

With respect to UIM coverage, each policy likewise covers the named insured and any family member residing with the named insured. Although that part of the policy concerning UIM coverage lists certain exclusions which parallel those found in the liability coverage section, there is no "household-owned vehicle" exclusion for bodily injury occurring in a vehicle owned by the named insured or a family member but which was not insured under the policy.

Crystal Smith was killed in October 1986 when the car she was driving—the Toyota covered by Policy A—was struck by another vehicle. A wrongful death suit against the other driver ("the tortfeasor") remains pending. Following a $50,000 payment to Crystal's estate by the tortfeasor's insurance company (representing the maximum liability limit provided by the tortfeasor's automobile insurance policy), Mr. Smith, individually and as administrator of Crystal's estate, sought acknowledgment from Nationwide that each of the $100,000 UIM coverages under Policies A and B could be stacked in the event of a recovery exceeding $50,000 in the wrongful death suit. Mr. Smith brought this action seeking a declaration that the coverages could be stacked after Nationwide declined to state the amount of available UIM coverage.

The trial judge granted Mr. Smith's motion for summary judgment, and denied Nationwide's motions to dismiss the action or in the alternative to stay it pending the outcome of the wrongful death suit. The judge ruled that Policy A and Policy B together provided $200,000 in UIM coverage, subject to a $50,000 setoff for payments made by the tortfeasor's insurance carrier. Thus, the judge ruled that "there is $150,000 in underinsured motorist

coverage available for a judgment, if any, in excess of $50,000 obtained by the plaintiff for the wrongful death of Crystal Michelle Smith."

Nationwide appeals from this ruling, contending that (1) Mr. Smith's declaratory judgment action should have been dismissed because it was not ripe for judicial resolution and (2) the contractual terms of Policies A and B limit the total UIM coverage to $50,000.

II

[1] We turn first to Nationwide's contention that the court had no jurisdiction to render a declaratory judgment because no actual controversy presently exists between the parties. Nationwide argues that a judgment establishing the amount of damages for Crystal's death has not yet been entered in the underlying suit and, therefore, the extent of available underinsurance coverage is an issue not ripe for judicial resolution. We disagree.

The construction of insurance contracts to determine the extent of coverage is an issue appropriate for declaratory judgment so long as an actual controversy exists between the parties. *See, e.g., Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc.,* 258 N.C. 69, 128 S.E.2d 19 (1962); *Nationwide Mut. Ins. Co. v. Roberts,* 261 N.C. 285, 134 S.E.2d 654 (1964); *Travelers Ins. Co. v. Curry,* 28 N.C. App. 286, 221 S.E.2d 75, *disc. rev. denied,* 289 N.C. 615, 223 S.E.2d 396 (1976); *cf. Ramsey v. Interstate Insurors, Inc.,* 89 N.C. App. 98, 102, 365 S.E.2d 172, 174-75, *disc. rev. denied,* 322 N.C. 607, 370 S.E.2d 248 (1988) (no actual controversy in declaratory judgment action since there was no pending action nor any practical certainty of future action involving insureds).

In the present case, there was more than the mere threat of a lawsuit which would implicate the insurer in some way; an underlying wrongful death action was pending against the tort-feasor. *Cf. Ramsey,* 89 N.C. App. at 101, 365 S.E.2d at 174 ("cases in which a declaratory judgment has been found appropriate for determining the existence or extent of insurance coverage have involved situations in which *legal action was pending,* or judgment had been entered, against the insured") (emphasis added, citations omitted). Moreover, although the case had not yet come to judgment, the tortfeasor's insurer had already paid the limits of his liability insurance policy to Crystal's estate. Significantly, this exhaustion of the limits of the liability policy triggered the applica-

bility of Nationwide's UIM coverage. *See* N.C. Gen. Stat. Sec. 20-279.21(b)(4) (1989) (UIM coverage is deemed to apply only when all applicable liability insurance policies have been exhausted through payment of the limits of liability — unless the UIM insurance carrier elects to pay its insured before all applicable liability limits are paid, preserving the right of assignment or subrogation).

At that stage in the litigation, without information about the extent of coverage, Mr. Smith could not determine what a reasonable settlement offer might be or the advisability of pursuing the wrongful death suit at potentially great personal and economic cost. As a federal court considering a similar question stated:

> [i]t would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement. . . . [D]eclaratory judgment relief was intended to avoid precisely the "accrual of avoidable damages to one not certain of his rights."

*A CandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981) (citations omitted). We thus conclude that Nationwide's refusal to state the extent of the UIM coverage under Policies A and B sparked the actual controversy between Mr. Smith and Nationwide which provides the basis for this suit. *Accord* 22A Am. Jur. 2d *Declaratory Judgments* Sec. 122 (1988) (insurer's refusal to admit or deny coverage without specifying reason for refusal affords sufficient basis for jurisdiction in declaratory judgment action by insured). This assignment of error is overruled.

### III

[2] Nationwide next contends that the judge erred in ruling that the amount of UIM coverage available to Crystal's estate is $150,000. Conceding on appeal — apparently for the first time — that Policy A applies to the accident, Nationwide posits a variety of arguments, the gist of which is that the amount of available coverage is $50,000, representing the limits of UIM coverage under Policy A ($100,000) with a $50,000 credit for the tortfeasor's liability insurance payment. The recent landmark decision in *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), renders meritless all but one of Nationwide's arguments regarding stacking. Accordingly, we will ad-

dress only that contention that a household-owned vehicle exclusion in Policy B bars UIM coverage for Crystal's death and therefore prevents stacking of that coverage with the UIM coverage provided by Policy A.

The Motor Vehicle Safety and Financial Responsibility Act ("the Act"), N.C. Gen. Stat. Secs. 20-279.1 to -279.39, explicitly approves the stacking of UIM coverages provided by two or more automobile insurance policies applicable to an accident; the avowed legislative purpose in permitting stacking is to provide the innocent victim of an inadequately insured driver with an additional source of recovery so that she may receive full compensation for her injuries. See N.C. Gen. Stat. Sec. 20-279.21(b)(4) (1989); Sutton, 325 N.C. at 265, 382 S.E.2d at 763; see also Note, Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties, 64 N.C.L. Rev. 1408, 1410 (1986). Family members residing with a named insured are included in that class of persons protected by the Act. See Sec. 20-279.21(b)(3).

Viewing the Act as a remedial statute to be liberally construed to accomplish its beneficial purposes, our Supreme Court in Sutton rejected policy language limiting UIM stacking, holding that the statute prevailed over the conflicting terms in the policy. 325 N.C. at 263, 382 S.E.2d at 762. The Court concluded that "the legislature intended N.C.G.S. (Sec.) 20-279.21(b)(4) to require both interpolicy and intrapolicy stacking of UIM coverages," meaning that all applicable UIM coverages in separate policies, as well as applicable coverages within the same policy, are stackable. Id. at 265, 382 S.E.2d at 763 (emphasis added).

The question decided in Sutton was whether an injured insured could stack UIM coverages for each of four vehicles listed in two separate policies. Analyzing the language of the statute, the legislative intent, and the public policy implications of its decision, the Court held that the coverages for each of the vehicles listed under the two policies was available to compensate the insured. The Court reasoned that interpreting the statute to permit interpolicy and intrapolicy stacking (1) is "consistent with the nature and the purpose of the [A]ct, . . . to compensate innocent victims of financially irresponsible motorists"; (2) "enhances the injured party's potential for full recovery of all damages"; (3) "gives the insured due consideration for the separate premiums paid for each UIM coverage"; and (4) avoids anomalous results (inherent in per-

mitting stacking of separate policies purchased for each vehicle but prohibiting stacking of coverages within a multivehicle policy). *Id.* at 266-67, 382 S.E.2d at 764.

It is not clear from *Sutton* who owned the vehicle driven by the injured insured. Thus, the *Sutton* opinion cannot be read to explicitly address the question presented here, namely, the effect on stacking of a policy provision excluding coverage for an accident involving an automobile owned by a named insured or a family member which is not insured by that policy. In our view, this court's decision in *Driscoll v. United States Liability Ins. Co.*, 90 N.C. App. 569, 369 S.E.2d 110, *disc. rev. denied*, 323 N.C. 364, 373 S.E.2d 544 (1988) is dispositive.

*Driscoll* purported to answer the question left open in *Crowder v. N.C. Farm Bureau Mutual Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127, *disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986), namely "whether Section 20-279.21 and [the insured's] insurance policy provide underinsured motorist coverage for a covered person for injuries sustained in a household-owned vehicle not named in the policy." *Id.* at 571, 369 S.E.2d at 112. This court answered the question in the negative. *Id.* at 572, 369 S.E.2d at 112. We reasoned that because UIM coverage is provided only in conjunction with bodily injury liability coverage, a family member for whom *liability* coverage is inapplicable by reason of the household-owned vehicle exclusion is not entitled to *UIM* coverage. *Id.* We noted that:

> "it is scarcely the purpose of any insurer to write a single [UIM] coverage upon one of a number of vehicles owned by an insured, or by others in the household, and extend the benefits of such coverage gratis upon all other vehicles — any more than it would write liability, collision or comprehensive coverages upon one such vehicle and indemnify for such losses as to any other vehicle involved."

*Id.* at 572, 369 S.E.2d at 112-13 (quoting 8C Appleman, *Insurance Law and Practice* Sec. 5078.15, at 179).

We acknowledge the recent nationwide trend, reflected in *Sutton*, toward liberally permitting stacking of UIM coverages — particularly when the policies sought to be stacked were issued to the injured insured and a resident family member. *See* Annot., *Combining of "Stacking" Uninsured Motorist Coverages Provided in Separate Policies Issued by Same Insurer to Different Insureds,*

23 A.L.R. 4th 108, Sec. 3. We also note that many jurisdictions have held the household-owned vehicle exclusion invalid, frequently in the context of stacking of uninsured and underinsured motorist coverages, and recognize that *Sutton* arguably could be read as providing the basis for doing so in North Carolina. *See* Annot., *Uninsured Motorist Coverage: Validity of Exclusion of Injuries Sustained by Insured while Occupying "Owned" Vehicle Not Insured by Policy*, 30 A.L.R. 4th 172, Secs. 3[b], 4, 6, 7[b], 9[b], 10, 11[b], 12[b], 13. Indeed, were we writing on a clean slate we would follow the nationwide trend reflected in *Sutton*. However, because *Sutton* neither overruled *Driscoll* nor directly addressed the issue presented here, we are compelled to follow the *Driscoll* rule enforcing the household-owned vehicle exclusion. *See In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution Control Act*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (one Court of Appeals panel lacks authority to overrule prior decisions of another panel on same issue and is bound by that decision unless it is overruled by an intervening decision from a higher court). Accordingly, we hold that, because the Toyota driven by Crystal was a household-owned vehicle not insured under Policy B, the UIM coverage provided by that policy is not available to compensate Mr. Smith for Crystal's death.

We note that the result we reach arguably conflicts with the public policy justifications set out in *Sutton*. Enforcing the policy's household-owned exclusion does nothing to accomplish the Act's purpose of compensating insureds or their family members unfortunate enough to be injured both by a financially irresponsible motorist and while driving a household-owned vehicle. Moreover, enforcing the exclusion creates an anomalous situation abhorred by *Sutton*. A different result would have been obtained in this case if Crystal had been driving a nonfamily-owned car, for example, a car owned by a neighbor: In that case, she would have been covered by Policy A (as a named insured), Policy B (as a family member), and any underinsurance benefits provided in the neighbor's insurance policy (which would provide UIM coverage for any driver of a neighbor's car); under the Act and the rule set out in *Sutton*, these UIM coverages would have been stackable. Finally, the number of premiums paid by the insured for the benefit of UIM coverages in this hypothetical example and in Crystal's case are no different, but the amount of compensation received is.

Despite our reservations in light of *Sutton*, *Driscoll* provides the law we must follow.

## IV

We reverse the ruling below, which declared, in essence, that the UIM coverages provided by Policy A and Policy B were stackable. Because Policy B provides no UIM coverage for Crystal's death, we remand with directions to enter a judgment declaring that the policies are not stackable, and, therefore, that the amount of UIM coverage available to the plaintiff-insured is $50,000, reflecting the $100,000 UIM coverage provided by Policy A with a setoff of $50,000 for payments made by the tortfeasor.

Reversed and remanded.

Judge LEWIS concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

I believe that this case is controlled by *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), and that under it the underinsured motorist coverages of both policies are available to the plaintiff. Even if the "household-owned vehicle" exclusion provision of the policy in *Driscoll v. United States Liability Insurance Co.*, 90 N.C. App. 569, 369 S.E.2d 110, *disc. rev. denied*, 323 N.C. 364, 373 S.E.2d 544 (1988) was properly enforced, which it apparently was not in view of *Sutton*, the policies here contain no such exclusion and one should not be written therein by us. As in *Sutton*, the two underinsured motorist coverages in this case were paid for by plaintiff and in keeping with *Sutton*, as well as ordinary business practice, he is entitled to receive what he paid for. Both coverages would certainly be available to plaintiff, as the majority concedes, if the daughter had been riding in a neighbor's car. That she was riding in an insured family car is no proper basis, in my opinion, for holding that only one coverage applies.