MICHAEL A. SMITH, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF CRYSTAL MICHELLE SMITH, DECEASED v. NATIONWIDE MUTUAL INSURANCE COMPANY

No. 130A90

(Filed 7 February 1991)

**Insurance § 69 (NCI3d)— underinsured motorist coverage—no applicable exclusion—stacking allowed**

The Superior Court correctly concluded in a wrongful death action arising from an automobile accident that the underinsured motorist (UIM) coverages provided in two separate

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

automobile insurance policies issued to the individual plaintiff could be aggregated or "stacked" to compensate for the death of his daughter, who was killed driving a vehicle owned by plaintiff and herself, where the daughter and the vehicle were listed in only one of the policies. The Court of Appeals erred in relying on exclusions found only in the medical payments and liability portions of the policy to create a family member exclusion under the UIM portion of the policy. N.C.G.S. § 20-279.21 (1989).

**Am Jur 2d, Automobile Insurance § 329.**

**Combining or "stacking" uninsured motorist coverages provided in separate policies issued by same insurer to same insured. 24 ALR4th 6.**

Justice MEYER dissenting.

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 97 N.C. App. 363, 388 S.E.2d 624 (1990), reversing and remanding the judgment entered by *Ellis, J.,* on 11 August 1988, in the Superior Court, WAKE County. Heard in the Supreme Court 8 October 1990.

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Theodore B. Smyth, for plaintiff-appellant.*

*LeBoeuf, Lamb, Leiby & MacRae, by Peter M. Foley and Stephanie L. Hutchins, for defendant-appellee.*

FRYE, Justice.

The issue presented in this appeal is whether the Court of Appeals erred in holding that the underinsured motorist (UIM) coverages provided in two separate automobile insurance policies issued to the individual plaintiff may not be aggregated or "stacked" to compensate for the death of his daughter who was killed while driving a vehicle owned by the individual plaintiff and the daughter, given that the daughter and the vehicle were listed in only one of the policies. The Court of Appeals, while acknowledging that a different result might be reached if writing on a clean slate, concluded that it was "compelled to follow the *Driscoll* rule enforcing the household-owned vehicle exclusion." *Smith v. Nationwide Mutual Ins. Co.,* 97 N.C. App. 363, 370, 388 S.E.2d 624, 629 (1990). Finding no "household-owned vehicle exclusion" applicable to the

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

UIM coverage in the policies at issue in *Driscoll* or in the present case, we overrule *Driscoll v. U.S. Liability Ins. Co.*, 90 N.C. App. 569, 369 S.E.2d 110, *disc. rev. denied*, 323 N.C. 364, 373 S.E.2d 544 (1988), and reverse the decision of the Court of Appeals in the case now before the Court.

On 2 October 1986, Crystal Smith was fatally injured in an accident while driving a 1977 Toyota Corolla automobile owned by Crystal Smith and her father, Michael Smith. The Toyota was insured under a liability insurance policy No. 61J097608 (Policy A) issued by Nationwide Mutual Insurance Company (Nationwide). Both Crystal Smith and Michael Smith were listed as insureds under Policy A. Michael Smith also had automobile liability insurance with Nationwide under policy No. 61E449873 (Policy B) which insured two other vehicles. Crystal Smith was not a named insured under Policy B, and she was not the owner of either of the two vehicles listed on Policy B. Crystal Smith was a member of her father's household at the time of the accident. Each of the Nationwide policies provided UIM coverage at limits of $100,000/$300,000.

The other vehicle involved in the accident was driven by Ricky Eugene Bates and owned by his wife, Virginia Bates. The Bates vehicle was insured by an automobile liability insurance policy issued by Farm Bureau Mutual Insurance Company (Farm Bureau). Farm Bureau paid its single limit liability coverage of $50,000 to the Estate of Crystal Michelle Smith.

On 13 January 1988, Michael Smith, individually and as administrator of his deceased daughter's estate, brought this declaratory judgment action pursuant to N.C.G.S. § 1-253 seeking a judgment for a "declaration of the rights that Michael Smith has in relation to two insurance policies issued by the defendant Nationwide Mutual Insurance Company." After setting out the factual dispute between plaintiff and defendant, plaintiff asked the Court to "enter a judgment declaring that underinsured motorist coverages provided for in the Nationwide policies numbered 61E449873 [Policy B] and 61J097608 [Policy A] may be stacked in calculating the total underinsured motorist coverage provided for to satisfy any settlement or judgment for the wrongful death of Crystal Michelle Smith." A wrongful death action, which sought to recover damages from the Bates for the wrongful death of Crystal Smith, was filed

in Wake County Civil Superior Court by Michael Smith as Administrator of Crystal Smith's Estate.

Nationwide does not deny that Crystal Smith was covered under Policy A; however, Nationwide does contest the issue of whether Policy B also provided UIM coverage for Crystal Smith. The trial court on 11 August 1988 denied defendant's motion to dismiss the action and granted plaintiff's motion for summary judgment. The trial court concluded that Crystal Smith was covered under the UIM provisions of Policy A and Policy B, which together provided a total of $200,000 in UIM coverage in favor of the Estate of Crystal Smith, subject to a $50,000 setoff representing payments received by the plaintiff from the tortfeasor's liability insurance carrier. On appeal by Nationwide, the Court of Appeals reversed, holding that "because the Toyota driven by Crystal was a household-owned vehicle not insured under Policy B, the UIM coverage provided by that policy is not available to compensate Mr. Smith for Crystal's death." *Smith v. Nationwide*, 97 N.C. App. at 370, 388 S.E.2d at 629. Judge Phillips dissented, concluding that under this Court's decision in *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), the UIM coverages of both policies are available to the plaintiff. *Id.* at 371, 388 S.E.2d at 629. Plaintiff appealed to this Court on the basis of the dissenting opinion.

When examining cases to determine whether insurance coverage is provided by a particular automobile liability insurance policy, careful attention must be given to the type of coverage, the relevant statutory provisions, and the terms of the policy. In the present case, the type of coverage at issue is UIM coverage. The policies in question, Policy A and Policy B, both include uninsured motorist (UM) coverage and UIM coverage in addition to the standard liability coverage and medical payments coverage.

The relevant statute in this case is N.C.G.S. § 20-279.21 (1989). The policy requirements for liability coverage are found in N.C.G.S. § 20-279.21(b)(2), supplemented by other provisions of § 20-279.21. Uninsured motorist coverage is governed by N.C.G.S. § 20-279.21(b)(3), supplemented by other provisions of § 20-279.21. Underinsured motorist coverage is governed by N.C.G.S. § 20-279.21(b)(4), supplemented by other provisions of § 20-279.21.

As noted above, § 20-279.21(b)(3) addresses UM coverage. It includes the following definition of "persons insured":

For purposes of this section "persons insured" means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above or any other person in lawful possession of such motor vehicle.

N.C.G.S. § 20-279.21(b)(3) (1989). Section 20-279.21(b)(4) addresses UIM coverage and incorporates by reference the same definition of "persons insured." *See* N.C.G.S. § 20-279.21(b)(4) (1989). Thus, § 20-279.21(b)(3) defines "persons insured" for purposes of UM coverage and UIM coverage.

Our Court of Appeals explained the term "persons insured" in *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127, *disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986).

In essence, N.C. Gen. Stat. 20-279.21(b)(3) establishes two "classes" of "persons insured": (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle.

*Id.* at 554, 340 S.E.2d at 129. Members of the second class are "persons insured" for the purposes of UM and UIM coverage only when the insured vehicle is involved in the insured's injuries. Members of the first class are "persons insured" even where the insured vehicle is not involved in the insured's injuries. *Id.* at 554, 340 S.E.2d at 130. We are concerned in this case with the first group or "class" of "persons insured" under N.C.G.S. § 20-279.21(b)(3) for purposes of UIM coverage. The individual plaintiff (Michael Smith) and his daughter Crystal are clearly members of the first class and thus "persons insured" under both policies without regard to whether the insured vehicle is involved in the insured's injuries.

Both Policy A and Policy B are virtually identical, with the exception of the Declarations page of each policy. The policy contains definitions of certain terms used in the policy, including the following:

Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

"We," "us" and "our" refer to the Company providing this insurance.

. . . .

**"Family member"** means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

In the instant case, "you" and "your" refer to Michael Smith as to Policy B and either Michael Smith or his daughter Crystal in Policy A. Crystal Smith was clearly a family member under Policy B.

Part D, the UM coverage section of both policies, provides that Nationwide

will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1. Bodily injury sustained by a **covered person** and caused by an accident . . . .

**Covered person,** as used in this type of coverage, includes "[y]ou or any **family member.**" The definition of an uninsured motor vehicle in Part D of the policy is expanded by an UM/UIM Endorsement to include an underinsured motor vehicle. Thus, under Part D of both policies, Crystal Smith is a family member and a "covered person" who would be entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle for bodily injury sustained by her in an accident, subject to the applicable limitations and exclusions.

Part B, the "Liability Coverage" section of the policies, provides an exclusion which states in part,

We do not provide Liability Coverage for the ownership, maintenance or use of . . . [a]ny vehicle, other than **your covered auto,** which is . . . owned by any **family member.**

Part C, the "Medical Payments Coverage" section of the policies, provides a similar exclusion which states in part,

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

> We do not provide Medical Payments Coverage for any person for bodily injury . . . [s]ustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is owned by any **family member**.

After careful examination of the policies, we are unable to find any similar "family member" exclusion in Part D, the UM coverage section of the base policies or in the UM/UIM Endorsement to the policies.

The "Liability Coverage" section of both Policy A and Policy B contains an "Other Insurance" exclusion. This exclusion provides:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

The "Medical Payments Coverage" section of both Policy A and Policy B also contains a similar "Other Insurance" exclusion. This exclusion provides:

> If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

The "Uninsured Motorist Coverage" section of these policies originally contained a somewhat similar "Other Insurance" exclusion. The first paragraph of the "Other Insurance" clause provided:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability for your injuries under all the policies shall not exceed the highest applicable limit under any one policy.

However, Uninsured/Underinsured Motorist Coverage Endorsement 1676B amended the "Other Insurance" provision and replaced the anti-stacking language of the first paragraph with the following:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

for your or a family member's injuries shall be the sum of the limits of liability for this coverage under all such policies.

This Endorsement clearly allows the stacking of UIM coverages for a family member when the family member is covered by more than one policy issued to the named insured.

A careful reading of these policies discloses a clear pattern of treating UM/UIM coverages in a different manner from that accorded to both liability coverage and medical payments coverage, especially as it relates to other insurance and family member vehicles. This distinction between these types of coverages in the policy seems to comport with the distinction made in the statutory authorization for UM and UIM coverages. The UIM coverage portion of § 20-279.21, for example, specifically includes an expression of "intent . . . to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies." N.C.G.S. § 20-279.21(b)(4) (1989). Likewise, the term "persons insured" is used in § 20-279.21(b)(3) relating to UM coverage (and by reference, to UIM coverage) but is not used in § 20-279.21(b)(2) relating to liability insurance. Both the policy and statutory schemes operate on the realization that the very nature of liability insurance coverage is different from UM/UIM insurance coverage. The former protects covered persons from the consequences of their own negligence; the latter protects covered persons from the consequences of the negligence of others. Medical payments coverage, on the other hand, gives very limited protection to the covered persons, without regard to their own negligence or that of others.

Our Court of Appeals has decided two significant cases determining whether UIM coverage is available in specific fact situations.[1] In *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127, the plaintiff was injured while riding as a passenger in a nonowned vehicle. The insurance company representing the tortfeasor paid the plaintiff $25,000, representing the full policy limit for automobile liability coverage. Plaintiff's father had an insurance policy with defendant Farm Bureau that included an UM/UIM Endorsement. *Id.* at 551-52, 340 S.E.2d at

---

1. *Johnson v. Sprinkle*, 92 N.C. App. 598, 376 S.E.2d 771, *disc. rev. denied*, 324 N.C. 335, 378 S.E.2d 792 (1989), a case dealing with UIM coverage, is an unpublished decision which establishes no precedent. R. App. P. 30(e).

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

128. The issue raised in *Crowder* was "whether an insured person is covered by uninsured or underinsured motorist coverage when the insured or covered vehicle is not in any way involved in the insured's injuries." *Id.* at 553, 340 S.E.2d at 129. The court construed the language of the policy and N.C.G.S. § 20-279.21(b)(3) and held that "under the particular circumstances of this case, coverage extends to those insured even though not in the covered vehicle at the time of the injury." *Id.* However, the court also stated that its holding was "expressly limited to allowing underinsured motorist coverage for insureds operating, or riding in, a nonowned vehicle." *Id.* at 555, 340 S.E.2d at 130.

The Court of Appeals purported to address the question of UIM coverage for an insured riding in a family-owned vehicle in *Driscoll v. U. S. Liability Ins. Co.*, 90 N.C. App. 569, 369 S.E.2d 110. In *Driscoll*, the issue was whether plaintiff was covered under the UIM provision of her daughter's insurance policy with defendant insurance company. Plaintiff, her husband and their adult daughter shared the same household. Plaintiff's daughter owned a 1981 AMC Concord automobile which was insured by the defendant, and the policy contained UIM coverage limited to $100,000 per claimant. Plaintiff, a passenger in an automobile owned and driven by her husband, was injured when that automobile was struck by another vehicle. The tortfeasor's liability insurance coverage was limited to $25,000 per claimant. Plaintiff's damages exceeded that amount. *Id.*

The Court of Appeals construed the language of the policy and N.C.G.S. § 20-279.21 and concluded that neither "provided underinsured motorist coverage for Jane Driscoll for injuries sustained while riding in a household-owned vehicle not named in the policy." *Id.* at 572, 369 S.E.2d at 113.

Under § 20-279.21(b)(4), UIM coverage may be obtained only if the policyholder has liability insurance in excess of the minimum statutory requirement, and, in any event, the UIM coverage must be in an amount equal to the policy limits for bodily injury liability specified in the policy. The Court of Appeals in *Driscoll* stated, "Historically underinsured motorist coverage and increased liability coverage are coterminous in North Carolina." *Driscoll*, 90 N.C. App. at 572, 369 S.E.2d at 112. The Court of Appeals then concluded that plaintiff "would have no bodily injury liability coverage under her daughter's policy because the policy excluded medical payments

coverage for damages sustained by a 'family member' while occupying or struck by any vehicle (other than the insured's covered auto) owned by any 'family member.' " *Id.* Because plaintiff would not be covered by her daughter's bodily injury liability coverage, the court in *Driscoll* concluded "subsection (b)(4) does not mandate underinsured motorist coverage." According to the Court of Appeals, logic dictates that since the exclusion for the family-owned vehicle prevented plaintiff from being covered by the bodily injury liability section of her daughter's policy, plaintiff should likewise not be covered by the UIM coverage of her daughter's policy. *Id.*

We do not agree with the Court of Appeals' rationale in *Driscoll* that no recovery may be obtained under the UM/UIM coverages unless the insured would also be entitled to recover under medical payments or bodily injury liability coverages. As stated earlier in this opinion, the purpose of UM/UIM insurance differs from the purposes of medical payments insurance or liability insurance. Likewise, while the statutory scheme requires the insurance company to offer UM/UIM coverages only if liability coverages exceed the minimum statutory requirement and in an *amount* equal to the limits of bodily injury liability insurance, nothing in the statute requires that the *scope* of the coverage be the same. In fact, the statutory scheme suggests the opposite. The liability section of the statute provides that the owner's policy shall insure certain persons "using any such motor vehicle or motor vehicles . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of *such motor vehicle or motor vehicles* . . . ." N.C.G.S. § 20-279.21(b)(2) (emphasis added). On the other hand, the UM (and by incorporation, the UIM) coverage is offered "for the protection of *persons insured* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ." N.C.G.S. § 20-279.21(b)(3) (emphasis added).

The statutory scheme for liability insurance is primarily vehicle oriented while UM/UIM insurance is essentially person oriented. Liability coverage is third-party insurance while UM/UIM coverage is first-party insurance. The relationship between liability insurance and statutorily mandated UM insurance was explained by the Michigan Supreme Court in an exhaustive opinion holding, inter alia, that an "owned vehicle exclusion" in the UM coverage provision of certain policies was unenforceable. *Bradley v. Mid-Century Ins. Co.*, 409 Mich. 1, 294 N.W.2d 141 (1980). The Michigan court concluded, "[t]he obligation to provide uninsured motorist coverage

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

was tied to liability coverage to facilitate its purchase and to determine the persons who must be provided with uninsured motorist coverage, and not to provide insurers a means of limiting the coverage to situations in which liability coverage would be in effect." *Id.* at 35-36, 294 N.W.2d at 151.

*Driscoll* held that a "family member" or "household-owned" vehicle exclusion in the liability coverage section of an owner's policy of liability insurance is effective to deny UIM coverage to a family member while a passenger in a family-owned vehicle not listed in the policy at issue. However, the definition of "persons insured" for UM/UIM coverage strongly suggests that the UM/UIM coverage for family members follows the person rather than the vehicle. Several courts have so held. *See, e.g., Higgins v. Firemen's Fund Ins. Co.*, 160 Ariz. 20, 770 P.2d 324 (1989) (UIM coverage is first party insurance, which protects and follows the person, not the vehicle); *Frank v. Horizon Assur. Co.*, 553 A.2d 1199 (Del. 1989) (UIM coverage is personal to insured, rather than vehicle related); *see generally* 8C J. Appleman, *Insurance Law and Practice*, § 5078.35 (1981 & Supp. 1990); 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 40.1 (2nd ed. 1987).

Even where the "family member" or "household-owned" vehicle exclusion is found in the UM/UIM section of the policy, the courts and legal scholars are divided as to its validity. John and Jean Appleman, in their treatise entitled, "Insurance Law and Practice," argue for upholding "family member" or "household member" exclusions when such exclusions are clearly stated in the UM/UIM section of the policy. Widiss, in his treatise entitled, "Uninsured and Underinsured Motorist Insurance," shows why such exclusions should not be upheld as to UM/UIM coverages.[2] Neither Widiss nor Appleman suggests judicial creation of such an exclusion where none exists in the section of the policy relating to UM/UIM coverage. Appleman says that the decisions which hold the household-owned vehicle exclusion to be valid would seem to be correct on principle. We note, however, that one of the cases cited as so holding, *Rodriquez v. Maryland Indem. Ins. Co.*, 24 Ariz. App. 392, 539 P.2d 196 (1975), was expressly overruled in *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985), and the "household-owned" vehicle exclusion was held invalid as contrary to the coverage mandated by

---

2. *See* 8C J. Appleman, *Insurance Law and Practice*, § 5078.35 (1981 and Supp. 1990) (Appleman quotes Widiss, then gives an opposing view).

statute. *See* 8C J. Appleman, *Insurance Law and Practice*, § 5078.35 (Supp. 1990).

We need not decide whether a "family member" or "household-owned" vehicle exclusion clearly stated in the UM/UIM section of a policy would be invalid as being contrary to N.C.G.S. § 20-279.21(b)(3), since no such exclusion is found in the UM/UIM section of the policies in this case. We conclude, however, that the Court of Appeals erred in *Driscoll* in relying on exclusions found only in the medical payments and liability portions of the policy to create the "family member" exclusion under the UIM portion of the policy.

According to the language of Policy A and Policy B, Crystal Smith was a covered person under Part D of both policies. She was covered under Policy A because she was a named insured, and she was covered under Policy B as a family member. She was a "person insured" of the first "class" established by N.C.G.S. § 20-279.21(b)(3) even where the insured vehicle is not involved in the insured's injuries. *See Crowder*, 79 N.C. App. at 554, 340 S.E.2d at 130. The plaintiff in *Crowder* was covered under the UIM section of his father's policy because he was a person insured under the language of the policy and under N.C.G.S. § 20-279.21(b)(3) even though his injuries were unrelated to the use or operation of the vehicle named in his father's policy. The only distinction between *Crowder* and the present case is that in *Crowder*, the party was injured while riding in a "nonowned" vehicle, while in the present case the party was injured while driving an "owned" vehicle. As indicated by our previous discussion, the distinction between *Crowder* and this case does not warrant reaching a different result. We hold that Crystal Smith was a "covered person" under the UM/UIM section of her father's Policy B and a "person insured" of the first class under N.C.G.S. § 20-279.21(b)(3) even though her fatal injuries were unrelated to the use or operation of the vehicles named in Policy B.

Like the plaintiff in *Driscoll* who sought to recover under her daughter's automobile insurance policy on the basis of being a member of the household, recovery in the present case is sought on the basis that the deceased was a member of her father's household. There is no provision in the UM section of Policy B, the UM/UIM Endorsement to that policy, or the relevant statutory provisions which would exclude Crystal Smith, a member of her

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

father's household at the time of the fatal accident, from being covered by the UIM coverage available in Policy B issued to her father. Therefore, plaintiff may recover under the UIM provision of Policy B as well as under the UIM provision of Policy A.

Having determined that his daughter was covered for UIM purposes under both policies, plaintiff contends this Court's decision in *Sutton v. Aetna*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), which addressed intrapolicy and interpolicy stacking of UIM coverages in automobile liability insurance policies, controls this case. In *Sutton*, the plaintiff was the named insured in two liability insurance policies, Policy A and Policy B. Policy A covered a Regal and a Camaro and provided $50,000 of UIM coverage for each automobile. Policy B covered a truck and a Plymouth and provided $100,000 UIM coverage for each automobile. The facts were stipulated. *Id.* at 261, 382 S.E.2d at 761. Plaintiff suffered damages in excess of $70,000 as a result of injuries sustained in an automobile accident caused by the negligence of a tortfeasor who had $50,000 of liability insurance coverage. *Id.* at 262, 382 S.E.2d at 761. Plaintiff recovered $50,000 from the tortfeasor and sought a declaratory judgment that her insurance policies (Policy A and Policy B) provided a total of $300,000 UIM coverage. This amount was determined by adding $50,000 UIM coverage for each of the two automobiles for which coverage was provided in Policy A and $100,000 UIM coverage for each of the automobiles provided for in Policy B. *Id.* at 263, 382 S.E.2d at 762. This Court concluded that under N.C.G.S. § 20-279.21(b)(4), plaintiff was entitled to have all UIM coverages in both policies aggregated or "stacked," resulting in total UIM coverage of $300,000. This coverage would be subject to a $50,000 offset paid by the tortfeasor's liability policy. *Id.*

There was no question that in *Sutton* the plaintiff was covered by both policies because the plaintiff was a named insured in each of the two policies. The only question was whether the UIM coverages for each automobile in the two policies issued to her could be aggregated or stacked so as to give plaintiff the benefit of each separate coverage. *Id.* at 260, 382 S.E.2d at 762. We held that this could be done.

In the instant case, the deceased, although clearly covered for UM/UIM benefits under Policy A as a named insured and under Policy B as a member of her father's household, was not a named

insured under Policy B. Thus, *Sutton* may be distinguished from the present case on this factual basis. Whether the principles enumerated in *Sutton* would require stacking in the instant case need not be decided since the same result is mandated by the policy language.

In order to determine whether plaintiff may aggregate or stack the UIM coverages under Policy A and Policy B, we first examine the policy language found in the Other Insurance provisions of Part D — Uninsured Motorists Coverage as amended by the UM/UIM coverage endorsement.

The UM/UIM endorsement amends the Other Insurance provision with respect to damages "you or a *family member* are legally entitled to recover from the owner or operator of an [*uninsured motor vehicle*]" as follows:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability for your or a *family member*'s injuries shall be the sum of the limits of liability for this coverage under all such policies.

Applying this Other Insurance provision of Policy B to the present case:

> If this policy (Policy B issued to Michael Smith, the individual plaintiff) and any other auto insurance policy issued to you (Policy A issued to Michael Smith and Crystal Smith) apply to the same accident (the accident of 2 October 1986 resulting in the death of Michael Smith's daughter, Crystal), the maximum limit of liability for your or a *family member*'s injuries shall be the sum (total) of the limits of liability ($100,000 under each policy) for this coverage (UIM) under all (both Policy A and Policy B) such policies.

The sum of the limits of liability for UIM coverage under both policies is clearly $200,000. Thus, under the language of the two policies, the limits of the UIM coverages may be aggregated or stacked to provide compensation to plaintiff in this case. We find nothing in the Motor Vehicle Financial Responsibility Act which compels a contrary reading or interpretation of the language of the two policies in this case. Thus, we find it unnecessary to decide whether the result reached in this case would also be mandated by our decision in *Sutton* or by any provision of the Motor Vehicle Financial Responsibility Act.

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

In the instant case, the deceased was a named insured under Policy A; however, she was covered under Policy B as a family member operating a household-owned vehicle unless excluded under a "family member" or "household-owned" exclusion in Policy B. As we have previously noted, no such exclusion appears in the UM/UIM sections of the policies. The only "family member" or "household-owned" vehicle exclusions in Policy B are found in the medical payments and liability sections of the policy. Contrary to the Court of Appeals' decision in *Driscoll*, these exclusions in the medical payments and liability sections of the policy are not to be read into the UM/UIM section of the policy. Thus, no "family member" or "household-owned" vehicle exclusion operates to prevent plaintiff from recovering under the UM/UIM Endorsement of Policy B.

The individual plaintiff was a named insured in both policies, the UIM coverages of both policies applied to the same accident, and the person fatally injured was a member of the individual plaintiff's household. Thus, under the insuring agreement of Part D and the "Other Insurance" provision of the UM/UIM Endorsement, the UIM coverages under Policy B may be stacked with the UIM coverage under Policy A.

For all of the above reasons, the decision of the Court of Appeals is reversed, and the case is remanded to that court for further remand to the Superior Court, Wake County, for reinstatement of the judgment of the Superior Court.

Reversed and remanded.

Chief Justice EXUM did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

The 1977 Toyota automobile that Crystal Smith was driving when fatally injured was owned by Crystal Smith and her father, Michael Smith, and both were named insureds under Nationwide's policy of insurance on that vehicle, Policy A. The father owned two other vehicles individually, which were both covered under Nationwide's Policy B. Crystal had no ownership interest in either of these two vehicles, which were covered by Nationwide's Policy B, and she was not a named insured in Policy B. Crystal was

a member of her father's household at the time of the accident and was a "covered person" under Policy B's UIM coverage so long as she was not injured while driving another vehicle owned by a member of the household, which vehicle was not insured under Policy B. Both Policies A and B had UIM coverages of $100,000/$300,000. The vehicle which collided with Crystal's Toyota was insured by Farm Bureau, and that company paid its single limit coverage of $50,000 to Crystal's estate. Nationwide does not dispute that Crystal was insured under Policy A but denies that Policy B provides UIM coverage to her when injured while driving her Toyota. The Court of Appeals held that because the Toyota driven by Crystal was a household-owned vehicle not insured under Policy B, no UIM coverage was provided by Policy B. The majority of this Court has held that even though the Toyota was not an insured vehicle under Policy B and even though Crystal was excluded from coverage under the express and specific language of both Policy B's liability and medical payments provisions, she is not excluded from Policy B's UIM coverage because the exclusionary language does not specifically appear in the provisions governing UIM coverage. I believe that the majority has erred in so holding, and I therefore dissent.

Crystal's father, the individual plaintiff, purchased both policies and chose to name Crystal and himself as named insureds on the policy covering Crystal's car (Policy A) and not to include her car or to include her as a named insured on his individual policy (Policy B) covering his other two family vehicles. This was no doubt entirely satisfactory with Nationwide, as it thus, through the exclusionary provisions, avoided all liability on Policy B if Crystal were injured while driving the Toyota insured under Policy A — or so it assumed, as would anyone else prior to the majority's opinion in this case. *See* Annotation, *Uninsured Motorist Coverage: Validity of Exclusion of Injuries Sustained by Insured While Occupying "Owned" Vehicle Not Insured by Policy*, 30 A.L.R.4th 172 (1984).

The majority candidly admits that the deceased was neither the "owner" of Policy B nor the "owner" of a vehicle insured by Policy B. Thus, *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), is inapplicable to the facts of this case. In *Sutton*, this Court held that a plaintiff who was issued two insurance policies by Aetna was entitled to stack the underinsured motorists coverages contained in each of the two policies (interpolicy stacking) and

the coverages contained in each policy (intrapolicy stacking). That holding was based exclusively on the express provision of N.C.G.S. § 20-279.21(b)(4) of the Motor Vehicle Safety and Financial Responsibility Act of 1953, as amended effective 1 October 1985. N.C.G.S. § 20-4.01(26) defines "owner" as:

> *A person holding the legal title to a vehicle*, or in the event a vehicle is the subject of a chattel mortgage or an agreement for the conditional sale or lease thereof or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with the immediate right of possession vested in the mortgagor, conditional vendee or lessee, said mortgagor, conditional vendee or lessee shall be deemed the owner for the purpose of this Chapter. For the purposes of this Chapter, the lessee of a vehicle owned by the government of the United States shall be considered the owner of said vehicle.

N.C.G.S. § 20-4.01(26) (1985) (emphasis added). This statute further provides that "[u]nless the context requires otherwise, the . . . definitions apply throughout this Chapter to the defined words and phrases and their cognates." N.C.G.S. § 20-4.01 (1985).

Holding that "the statute prevails over the language of the policy," *Sutton*, 325 N.C. at 263, 382 S.E.2d at 762, this Court in *Sutton* then considered the language of the statute which provides in relevant part:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the *owner's* underinsured motorist coverages provided in the *owner's* policies of insurance; *it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply*, the benefit of all limits of liability of underinsured motorist coverage under all such policies . . . .

N.C.G.S. § 20-279.21(b)(4) (1985) (emphasis added). The plaintiff in *Sutton* was the "owner" of both of the policies within the meaning of N.C.G.S. § 20-279.21(b)(4). The plaintiff in *Sutton* was also the *owner* of all of the vehicles insured in each of the two policies. Thus, the plaintiff in *Sutton* satisfied whatever interpretation of

the word "owner" this Court chose to apply when interpreting the statute.

Properly interpreted, N.C.G.S. § 20-279.21(b)(4) is intended to limit the underinsured motorists coverage applicable to any claim to

> the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the . . . [owner of the vehicle's] underinsured motorist coverages provided in the . . . [owner of the vehicle's] policies of insurance; it being the intent of this paragraph to provide to the owner [of the vehicles], in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies . . . .

N.C.G.S. § 20-279.21(b)(4) (1989). Here, the only vehicles insured under Policy B were owned exclusively by Michael Smith; the Toyota owned jointly by Crystal and her father was not insured under that policy. Even if "owner" is interpreted to mean owner of the policy, as opposed to owner of the vehicles insured under the policy, the same result obtains, as Crystal was not the owner of Policy B.

If the legislature had wanted all "covered persons," such as Crystal Smith under Policy B here, to have the benefit of the quoted paragraph of N.C.G.S. § 20-279.21(b)(4), the legislature could have used the phrase "covered persons" rather than the word "owner" to define the scope of the statute. The legislature instead chose to restrict the benefits of the quoted provision to those who owned the vehicle (or possibly who owned the policy). Under the ordinary rules of statutory construction, the legislature must be presumed to have intended to so restrict the statute's application, and where, as here, the statute is clear and unambiguous, it must be construed according to its plain meaning. *Lemons v. Old Hickory Council*, 322 N.C. 271, 367 S.E.2d 655, *reh'g denied*, 322 N.C. 610, 370 S.E.2d 247 (1988). Since, by its own clear terms, the statute is inapplicable because Crystal was not an "owner" under Policy B, the provisions of the policy control.

The first line of the uninsured/underinsured motorists coverage of Policy B (endorsement 1676B) states:

> This coverage is subject to all of the provisions of the policy *with respect to the vehicles for which the Declarations indicates that Uninsured/Underinsured Motorists Coverage applies* except as modified as follows . . . .

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

The only vehicles listed on the declarations sheet of Policy B are the father's other two vehicles, a 1960 Ford pickup and a 1977 Plymouth station wagon. The declarations sheet states that Policy B provides uninsured and underinsured motorists coverage for both of those vehicles in specified amounts. Nowhere does the declarations sheet "indicate" that uninsured/underinsured motorists coverage applies to the 1977 Toyota which was involved in the accident. Under the clear terms of endorsement 1676B, the underinsured motorists coverage provided in Policy B is applicable only to the vehicles listed, and not to any other vehicles. The language of endorsement 1676B in the first sentence and the insuring phrase for underinsured motorists ties the coverage into the vehicles on the policy and is tantamount to an exclusion for other vehicles in the household or owned by members of the household. It is immaterial that Crystal Smith was a "covered person" under the policy, since the very first sentence of the endorsement clearly limits the underinsured motorists coverage "to the vehicles for which the Declarations indicates that Uninsured/Underinsured Motorists Coverage applies."

Many jurisdictions have held the "other owned vehicles" or "household vehicle" exclusion valid for uninsured or underinsured motorists coverage to prevent an insured from operating or riding in an owned vehicle with low limits of underinsured coverage and obtaining the benefit of another policy in the household with higher limits. *See* Annotation, *Uninsured Motorist Coverage: Validity of Exclusion of Injuries Sustained by Insured While Occupying "Owned" Vehicle Not Insured by Policy*, 30 A.L.R.4th 172 (1984); *see also Crawford v. Emcasco Ins. Co.*, 294 Ark. 569, 745 S.W.2d 132 (1988); *Kluiter v. State Farm Mut. Auto. Ins. Co.*, 417 N.W.2d 74 (Iowa 1987); *Allen v. Auto Club Ins. Ass'n*, 175 Mich. App. 206, 437 N.W.2d 263 (1988); *Hind v. Quilles*, 745 P.2d 1239 (Utah 1987) (per curiam); *Deel v. Sweeney*, 383 S.E.2d 92 (W. Va. 1989).

Prior to the majority's holding in this case, I thought it too well established to be questionable that an automobile insurance policy covering one vehicle in the household does not provide underinsured motorists coverage for injuries sustained by a member of the household while occupying another household vehicle or vehicle owned by that member of the household not listed on the policy.

Under the majority's decision, there is nothing to prevent a family with two, three, four, or more vehicles from insuring one

of them at the most favorable premium rate and extending UIM coverage to the others. This could be the case even if the vehicle insured is the safest one and the others have proven to be unsafe or, for that matter, even if the others are covered by minimum coverage policies for which UIM coverage is not even available. It also occurs to me that the majority's decision allows a family to purchase high limits of underinsured coverage on drivers in the household with lower points or ratings at a low premium and to provide coverage to other members of the household with high point totals or ratings when they are injured in vehicles which they own individually. I cannot believe that our legislature intended such a result.

*Insurance Co. of North America v. Hippert*, 354 Pa. Super. 333, 511 A.2d 1365 (1986), addressed this very concern. In that case, the court upheld the validity of policy language which excluded injury to a named insured injured in an owned vehicle that was not on the particular policy and discussed some of the public policy reasons behind such exclusion. The court stated:

> We first address the possible effects of ruling the exclusionary clause invalid. If that is done, it is quite obvious that Judith Hippert, as owner of both the uninsured vehicle involved in the accident and the second vehicle insured by Allstate reaps the benefits. Such a holding would allow her to pay premiums on insurance for one vehicle while actually receiving coverage on two vehicles.

*Id.* at 339, 511 A.2d at 1368. The court continued in a footnote: "The potential for abuse is staggering. Should this result, there is nothing that would prohibit a family with three, four or more vehicles from insuring one at the most favorable rate and then extend coverage by virtue of this Court's ruling. We cannot imagine that the legislature intended the . . . Act impose such a heavy burden on the insurance companies." *Id.* at 339 n.4, 511 A.2d at 1368 n.4. The court in *Hippert* went on to hold that, even in view of the statute in question, defining a person insured as the named insured or a spouse or other relative resident of the household, it did not necessarily follow in all circumstances that the insurance " 'follows the person, not the vehicle.' " *Id.* at 342, 511 A.2d at 1369. The court declined to allow the premiums paid on one vehicle to extend to any vehicle driven by a "person insured" under the policy when operating an owned vehicle not on the policy.

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

Our own Court of Appeals evidenced a similar concern in *Driscoll v. U.S. Liability Ins. Co.*, 90 N.C. App. 569, 369 S.E.2d 110, *disc. rev. denied*, 323 N.C. 364, 373 S.E.2d 544 (1988):

"[I]t is scarcely the purpose of any insurer to write a single UM [underinsured/uninsured motorist] coverage upon one of a number of vehicles owned by an insured, or by others in the household, and extend the benefits of such coverage gratis upon all other vehicles — any more than it would write liability, collision or comprehensive coverages upon one such vehicle and indemnify for such losses as to any other vehicle involved. Nor would any reasonable person so expect." 8C J. Appleman, *Insurance Law and Practice*, Section 5078.15 at 179.

*Id.* at 572, 369 S.E.2d at 112-13.

This Court recently reaffirmed the validity of a similar exclusion which is contained in the same paragraph of Policy B that contains the "other owned vehicle" exclusion. *N.C. Farm Bureau Mutual Ins. Co. v. Warren*, 326 N.C. 444, 390 S.E.2d 138 (1990). The rationale applied by the Court in *Warren* is equally applicable here. In his dissent, Justice Martin remarked:

The insurance companies want to exclude vehicles used habitually by an insured without the payment of insurance premiums. The policy is to prevent a family or person from having two or more automobiles that are used interchangeably with only one automobile being insured.

*Id.* at 448, 450, 390 S.E.2d at 141, 142 (Martin, J., dissenting).

I believe that this Court should hold very plainly what I conceive to be the intent of our statute, that is, that underinsured coverage "follows suit" with the liability coverage. Non-owners get UIM coverage to the same extent the policy protects others under the "liability" coverage. If there is no "liability" coverage, there is no UIM coverage. Such a result is consistent with our statute, the policy language, and common sense and in no way conflicts with our Financial Responsibility Act. Furthermore, it would avoid the problems I have expressed in this dissent.

I desire to also point out two arguments made by Nationwide which neither the Court of Appeals nor the majority of this Court has addressed.

SMITH v. NATIONWIDE MUTUAL INS. CO.

[328 N.C. 139 (1991)]

Nationwide contends, and properly so, that simply because it is the carrier under both policies, it should not be treated differently than if the policies had been issued by two separate companies. Part D of each of the Nationwide policies (Policies A and B), which sets forth the underinsured motorists coverage, contains a limit of liability clause which provides:

*Any amounts otherwise payable* for damages under this coverage *shall be reduced* by all sums:

1. Paid because of the bodily injury or property damage *by or on behalf of persons or organizations who may be legally responsible.*

(Emphasis added.)

Nationwide contended before the Court of Appeals that this clause limited Nationwide's combined exposure under both policies to $50,000 because the clause required each policy to be reduced by certain other payments. Plaintiff did not address Nationwide's argument in its brief to the Court of Appeals, and the Court of Appeals failed to consider the substance of Nationwide's argument.

Nationwide's argument under the limit of liability clause contained in the policy is not an argument regarding stacking. Nationwide simply contends that, since both Policies A and B contain this clause, *each* policy must be reduced by the $50,000 payment by Farm Bureau to Crystal Smith's estate on behalf of the tort-feasor, Bates, a person who is "legally responsible." *See N.C. Farm Bureau Mut. Ins. Co. v. Hilliard,* 90 N.C. App. 507, 512-13, 369 S.E.2d 386, 389 (1988). Under the clear language of the policy, Policy B must also be reduced by the $50,000 payment to be made by Nationwide under Policy A. Furthermore, as to Policy B, a verdict was rendered against the tort-feasor, Bates, in the amount of $105,235.16. Nationwide has assumed this liability up to the limits contained in Policy A, $50,000. Accordingly, Nationwide's $50,000 payment under Policy A and the $50,000 payment from Farm Bureau on behalf of the tort-feasor must be credited against Nationwide's Policy B pursuant to the limit of liability clause contained in that policy. When these payments, totaling $100,000, are credited against the $100,000 underinsured motorists coverage under Policy B, no underinsured motorists coverage remains under that policy. Thus, Nationwide's total exposure under the combined policies, even if aggregated, is $50,000.