MICHELLE K. HARRIS, THROUGH HER GUARDIAN AD LITEM, DAVID B. FREEDMAN, DAVID A. HARRIS, AND ELLEN E. HARRIS, PLAINTIFFS v. NATIONWIDE MUTUAL INSURANCE COMPANY, DEFENDANT

No. 9021SC911

(Filed 4 June 1991)

Insurance § 69 (NCI3d)— automobile insurance—stacking—non-owner family member

The trial court correctly granted summary judgment for plaintiffs in a declaratory judgment action to determine whether plaintiffs were entitled to stack the UIM coverages of three separate vehicles covered under a single Nationwide policy. A distinction between the policy owner and a non-owner family member covered by the policy would not be valid under *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259. N.C.G.S. § 20-279.21(b)(4).

**Am Jur 2d, Automobile Insurance § 329.**

**Combining or "stacking" uninsured motorist coverages provided in single policy applicable to different vehicles of individual insured. 23 ALR4th 12.**

Judge GREENE dissenting.

APPEAL by defendant from judgment entered 14 June 1990 in FORSYTH County Superior Court by *Judge James M. Long*, granting plaintiffs' motion for summary judgment. Heard in the Court of Appeals 13 March 1991.

Plaintiff Michelle K. Harris, the minor daughter of plaintiffs David and Ellen Harris, was injured in an automobile accident while traveling as a passenger in a vehicle owned by George Wayne Faust and operated by his daughter, Mary Elizabeth Faust, on 25 September 1989. The Faust vehicle was insured under a State Farm Insurance Company policy having liability limits of $100,000.00. Michelle incurred medical expenses alone in excess of $100,000.00. At the time of the accident, Michelle's parents owned three vehicles insured under a single policy by defendant Nationwide Mutual Insurance Company [hereinafter Nationwide]. In its policy covering the Harris' three vehicles, Nationwide provided uninsured and underinsured motorist [hereinafter UIM] coverage of one hundred thousand dollars ($100,000.00) per person and three hundred thou-

sand dollars ($300,000.00) per accident for each vehicle insured. Plaintiffs paid to Nationwide separate premiums of $10.00 per vehicle for uninsured and UIM coverage.

Plaintiffs filed this action for declaratory judgment on 2 March 1990 requesting the trial court to determine whether plaintiffs were entitled to stack the UIM coverages of three separate vehicles covered under the single Nationwide policy. On 14 May 1990 plaintiffs filed a motion for judgment on the pleadings and summary judgment. Defendant orally cross-motioned for summary judgment pursuant to N.C.R. Civ. P. 56(b). In a judgment dated 14 June 1990, the trial court granted plaintiffs' motion for summary judgment. The dispositive portions of the trial court's judgment are as follows:

> 2. That the coverage for the three vehicles listed in the insurance policy referred to in the Complaint and issued by the defendant to the plaintiffs David A. Harris and Ellen E. Harris can be stacked so as to provide underinsured motorist coverage in the amount of $300,000 for injuries and damages sustained by the plaintiffs arising out of the accident described in the Complaint, and that the underinsured motorist coverage available to Michelle Harris is identical to the coverage available to David A. Harris and Ellen E. Harris under the insurance policy issued by the defendant.

> 3. That the defendant's limit of liability to the plaintiffs shall be $300,000, less the primary coverage paid to the plaintiffs pursuant to N.C. Gen. Stat. §20-279.21(b)(4).

The court denied defendant's oral motion for summary judgment. Defendant appealed.

*Womble Carlyle Sandridge & Rice, by Richard T. Rice, Clayton M. Custer and James P. Hutcherson, for plaintiffs-appellees.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Paul D. Coates, for defendant-appellant.*

WELLS, Judge.

Defendant assigns error to the trial court granting plaintiffs' motion for summary judgment and denying defendant's motion for summary judgment. Defendant contends that Michelle K. Harris

**HARRIS v. NATIONWIDE MUT. INS. CO.**

[103 N.C. App. 101 (1991)]

is not entitled to stack the three vehicles on her parents' single policy because she is not the owner of the insured vehicles.

The decision of our Supreme Court in *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), allows intrapolicy and interpolicy stacking of UIM coverage. In *Sutton*, the court held that the language of the Motor Vehicle Safety and Financial Responsibility Act is intended to permit both interpolicy and intrapolicy stacking of multiple vehicles for UIM coverage by the policy owner and prevails over any inconsistent language found in a policy. Therefore, the dispositive question in this case is whether a distinction exists for UIM coverage purposes between the policy owner and a non-owner family member covered by the policy.

We perceive that such a distinction would not be valid under *Sutton*. Although the plaintiff in *Sutton* was the owner of the insured vehicles, the Court's holding in *Sutton* is that the benefits contemplated under the applicable statutory provisions in N.C. Gen. Stat. § 20-279.21(b)(4) flow to the *insured injured party*. (Emphasis supplied). At the time of the accident in this case, Michelle was a household resident and a family member as contemplated by the provisions of defendant's policy, and was therefore included *under the policy* as a person insured. Under the holding of this Court in *Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127, *disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986), Michelle falls within the class of persons insured under the provisions of G.S. § 20-279.21(b)(3) for her claims in this case, thus entitling her to UIM coverage under her parents' policy independent of policy provisions. *See also Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991).

For the reasons stated, the judgment of the trial court is

Affirmed.

Judge WYNN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

This case presents two distinct issues. First, whether intrapolicy stacking is appropriately considered in determining if the tort-

feasor's vehicle is underinsured. Second, whether intrapolicy stacking is permitted in determining an insurer's limit of liability when the injured party is a non-named insured. For the reasons stated below, I dissent.

I

The defendant argues that the plaintiffs are not entitled to any underinsured coverage because the tortfeasor's vehicle does not qualify as an underinsured vehicle either under the policy language or under N.C.G.S. § 20-279.21(b)(4) (1989). Specifically, defendant contends that because the tortfeasor's vehicle was insured by a policy having liability limits of $100,000 and because the insured injured party was covered under a policy having primary liability limits of $100,000, the tortfeasor's vehicle was not an underinsured vehicle. The plaintiffs contend the tortfeasor's vehicle was underinsured because the UIM coverages available to the insured injured party was $300,000, thus qualifying the tortfeasor's vehicle as an underinsured vehicle under both the statute and the policy.

POLICY

The policy of insurance in question defines an underinsured motor vehicle in the "uninsured/underinsured motorists coverage" endorsement as

a land motor vehicle . . . of any type . . . [t]o which . . . the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is:

a. equal to or greater than the minimum limit specified by the financial responsibility law of North Carolina; and

b. less than the *limit of liability for this coverage.*

(emphasis added). The policy in "Part D Uninsured Motorists Coverage" defines "limit of liability" as

[t]he limit of bodily injury liability shown in the Declarations for 'each person' for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for 'each person', the limit of bodily injury liability shown in the Declarations for 'each accident' for Uninsured Motorists Coverage is our maximum limit of liability for all

damages for bodily injury resulting from any one accident. The limit of **property damage** liability shown in the Declarations for 'each accident' for Uninsured Motorists Coverage is our maximum limit of liability for all damages to all property resulting from any one accident. This is the most we will pay for bodily injury and **property damage** regardless of the number of:

1. **Covered persons;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

In *Tyler v. Nationwide Mut. Ins. Co.*, 101 N.C. App. 713, 401 S.E.2d 80 (1991), this Court construed a very similar "limit of liability" provision contained in a medical payment provision of an insurance policy. Specifically, the "limit of liability" provision in *Tyler* provided:

LIMIT OF LIABILITY. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident regardless of the number of:

1. Claims made;

2. *Vehicles or premiums shown in the Declarations . . .* ; or

3. Vehicles involved in the accident.

*Id.* at 715, 401 S.E.2d at 82 (emphasis in original).

In *Tyler*, the insurer had issued one policy of insurance providing "medical payments coverage with a limit of $2,000.00 for the two covered vehicles." *Id.* at 714, 401 S.E.2d at 81. The insured paid a separate premium for the medical payment coverage on each of the two vehicles. The issue in *Tyler* was whether the insured was entitled to "intrapolicy stacking of medical payments coverage." *Id.* The Court held that the specific unambiguous language of the "limit of liability" provision contained in the policy precluded plaintiff from stacking "the medical payments coverage for each car for which he has paid a premium." *Id.* at 715, 401 S.E.2d at 82; *see also Hamilton v. Travelers Indem. Co.*, 77 N.C. App. 318, 324, 335 S.E.2d 228, 232 (1985), *disc. rev. denied*, 315 N.C. 587,

HARRIS v. NATIONWIDE MUT. INS. CO.

[103 N.C. App. 101 (1991)]

341 S.E.2d 25 (1986) (similar "limit of liability" provision precluded plaintiff from stacking separate uninsured motorist coverages on three different vehicles insured in one insurance policy). Consistent with *Tyler*, plaintiffs are not entitled under the policy to stack UIM coverages on the three vehicles to determine the "limit of liability." Therefore, the "limit of liability," as that term is used in the underinsured endorsement in this policy, is $100,000, and because the tortfeasor was also insured in the amount of $100,000, the tortfeasor's vehicle was not an underinsured vehicle as that term is used in the policy.

If the insured had purchased UIM coverages in varying amounts for the three vehicles named in the single policy, the policy would undoubtedly be ambiguous because it would be impossible to determine the applicable limits of liability. In such event, the "limit of liability" would be determined by stacking the UIM coverages for each car on which premiums were paid. *See Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 509, 246 S.E.2d 773, 779 (1978) (absent express language in the policy relating to whether the plaintiff was entitled to collect medical payments for each car on which premiums were paid, insured entitled to stack). However, in this case the UIM coverage was the same on each of the three vehicles, namely $100,000.

STATUTE

An "underinsured highway vehicle" is defined by statute as

a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than *the applicable limits of liability under the owner's policy.*

N.C.G.S. § 20-279.21(b)(4) (emphasis added). The statute does not define "the applicable limits of liability under the owner's policy." Does this statutory reference to "limits of liability" refer to the owner's primary liability coverage, the UIM coverage on any one vehicle, or the total UIM coverages on all vehicles? Because of this ambiguity, "resort must be had to judicial construction to ascertain the legislative will, . . . and the courts will interpret the language to give effect to the legislative intent." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 389 (1978) (citation omitted). "In seeking to discover this intent, the court should consider the

language of the statute, the spirit of the act, and what the act seeks to accomplish." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). The statute "should be construed contextually and harmonized if possible to avoid absurd or oppressive consequences." *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 177, 171 S.E.2d 427, 430 (1970).

The nature and purpose of N.C.G.S. § 20-279.21(b)(4) is to "compensate innocent victims of financially irresponsible motorists . . . [and enhance] the injured party's potential for full recovery of all damages." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 266-67, 382 S.E.2d 759, 764 (1989). The statute should be "liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Id.* at 265, 382 S.E.2d at 763. In *Sutton*, our Supreme Court held that the statute should be construed to prevent the " 'anomalous situation that an insured is better off — for purposes of the underinsured motorist coverage — if separate policies were purchased for each vehicle.' " *Id.* at 267, 382 S.E.2d at 764 (citation omitted).

To construe "applicable limits of liability under the owner's policy" to be the amount of UIM coverage on any one vehicle shown in the policy declarations, here $100,000, would result in an anomalous situation where the insured would be better off had he purchased separate policies for each vehicle. If separate policies had been purchased, providing the same coverage on each of the three vehicles, the "limits of liability" under the UIM endorsement would have been $300,000. This anomalous situation is exactly what our Supreme Court in *Sutton* attempted to avoid when it allowed intrapolicy stacking of UIM coverages and likewise should be avoided in ascertaining the "limits of liability" for UIM coverage. Furthermore, to preclude stacking of UIM coverages as contained in one policy, in determining the applicable "limits of liability," would seriously impair a party's potential for full recovery of all damages sustained in an accident caused by an underinsured motorist.

Therefore, the applicable "limits of liability" referred to in the statute is not that amount stated in the declarations for any one vehicle, but instead the aggregate of the UIM coverages stated in the policy's declarations. This construction also "gives the insured due consideration for the separate premiums paid for each UIM coverage," whether in one policy, as here, or in separate policies. *Id.*

HARRIS v. NATIONWIDE MUT. INS. CO.

[103 N.C. App. 101 (1991)]

Because "the terms of the policy conflict with statutory provisions favorable to the insured, the provisions of the statute will prevail." *Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co.*, 283 N.C. 87, 91, 194 S.E.2d 834, 837 (1973). Accordingly, the tortfeasor's vehicle qualifies as an underinsured vehicle if it is insured in an amount less than the aggregated underinsured motorist coverages stated in the policy's declarations.

II

The defendant next argues that even if the tortfeasor's vehicle is determined to be underinsured, both the policy and the statute prohibit Michelle K. Harris from stacking the UIM coverages to determine the insurer's limit of liability.

POLICY

The "uninsured/underinsured motorists coverage" endorsement in the insurance policy provides in pertinent part:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability for your or a **family member's** injuries shall be the sum of the limits of liability for this coverage under all such policies.

*In Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 146, 400 S.E.2d 44, 49 (1991), our Supreme Court read this policy language to allow "the stacking of . . . UIM coverages for a family member when the family member is covered by more than one policy issued to the named insured." However, the unambiguous language of this policy prevents stacking of the UIM coverages contained in it.

The above endorsement language requires two or more policies before stacking is allowed by a family member. Here, Michelle K. Harris was covered by only one policy. This interpretation becomes irrefutable in light of the policy definition of "limit of liability" which limits the defendant's liability for UIM coverage to $100,000 "regardless of the number of . . . vehicles or premiums shown in the Declarations . . . ." Therefore, the endorsement language, read in connection with the "limit of liability" provision, prohibits the stacking by a family member of multiple UIM coverages contained in a single policy.

HARRIS v. NATIONWIDE MUT. INS. CO.

[103 N.C. App. 101 (1991)]

STATUTE

Whether under the statute a non-named insured, such as Michelle K. Harris, is entitled to stack UIM coverages to determine the insurer's limit of liability is an issue which has not been addressed by our Supreme Court. In *Sutton*, the plaintiff injured party was the policyholder and named insured of all of the policies of insurance which the Court allowed to be stacked. *Sutton*, 325 N.C. at 261-62, 382 S.E.2d at 761. When presented with a case where the injured party was not the policyholder, the Court refused to apply the statutory analysis used in *Sutton* to determine the issue of stacking of UIM coverages. *Smith*, 328 N.C. at 151-52, 400 S.E.2d at 52. Instead, the *Smith* Court allowed stacking under the terms of the policy. *Id.*

The UIM statute provides in pertinent part:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the *owner's underinsured motorist coverages* provided in the *owner's policies of insurance*; *it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply*, the benefit of all limits of liability of underinsured motorist coverage under all such policies: Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. 58-40-15(9) and (10).

N.C.G.S. § 279.21(b)(4) (emphases added). The statute is unambiguous in its language that only the "owner" is allowed "the benefit of all limits of liability of underinsured motorist coverage under all such policies . . . ." In other words, only the "owner" can stack underinsured motorist "coverages and policies." *See Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (statute allows stacking of coverages and policies). The statute's reference to "owner," in context, refers to the owner of the policies or policy of insurance containing underinsured motorist coverages. *See* N.C.G.S. § 20-4.01 (1989) (unless context of statute requires a different definition, definition of words in § 20-4.01 apply to statute). Therefore, under the statute, Michelle K. Harris, who is not the owner of the policy in question, is not allowed to stack the underinsured motorist coverages available on the policy of insurance issued by the defendant to Michelle's parents.

In conclusion, while I find that the tortfeasor's vehicle qualifies as an underinsured vehicle, Michelle K. Harris is prohibited by both the statute and the policy from stacking UIM coverages. Accordingly, I would reverse the order of the trial court.