MICHELLE K. HARRIS, THROUGH HER GUARDIAN *AD LITEM*, DAVID B. FREEDMAN, DAVID A. HARRIS, AND ELLEN E. HARRIS v. NATIONWIDE MUTUAL INSURANCE COMPANY

No. 305A91

(Filed 4 September 1992)

1. **Insurance § 527 (NCI4th) — underinsured highway vehicle — meaning of "applicable limits of liability"**

    In determining whether a tortfeasor's vehicle is an "underinsured highway vehicle" within the meaning of N.C.G.S. § 20-279.21(b)(4), the "applicable limits of liability" referred to in the statute are those under the UIM coverage in the owner's policy. Therefore, the proper comparison is between the tortfeasor's liability coverage and plaintiff's UIM coverage rather than between the tortfeasor's liability coverage and plaintiff's liability coverage.

    **Am Jur 2d, Automobile Insurance § 322.**

    **Uninsured and underinsured motorist coverage: recoverability under uninsured or underinsured motorist coverage of deficiencies in compensation afforded injured party by tortfeasor's liability coverage. 24 ALR4th 13.**

2. **Insurance § 528 (NCI4th) — underinsured vehicle — intrapolicy stacking of UIM coverages**

    The language "applicable limits of liability" in N.C.G.S. § 20-279.21(b)(4) refers to all UIM limits available in a policy applicable to plaintiff's claim and allows the intrapolicy stacking of UIM coverages in determining whether a tortfeasor's vehicle is an "underinsured highway vehicle." Therefore, the tortfeasor's vehicle qualified as an underinsured vehicle where plaintiff's aggregate UIM coverages exceed the aggregate liability of the tortfeasor.

    **Am Jur 2d, Automobile Insurance § 322.**

    **Uninsured and underinsured motorist coverage: recoverability under uninsured or underinsured motorist coverage of deficiencies in compensation afforded injured party by tortfeasor's liability coverage. 24 ALR4th 13.**

HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

3. **Insurance § 528 (NCI4th) — intrapolicy stacking of UIM coverages — nonowner family member**

The minor plaintiff, as a nonowner family member living in the same household as the named insured, is entitled to stack UIM coverages in her parents' policy in determining whether the tortfeasor's vehicle is underinsured. Intrapolicy stacking of UIM coverages is allowed when the injured party is a person insured of the first class.

**Am Jur 2d, Automobile Insurance § 322.**

**Uninsured and underinsured motorist coverage: recoverability under uninsured or underinsured motorist coverage of deficiencies in compensation afforded injured party by tortfeasor's liability coverage. 24 ALR4th 13.**

4. **Insurance § 529 (NCI4th) — intrapolicy stacking by nonowner — not excess insurance**

Stacking multiple vehicles on one policy by a nonowner is not "excess" or "additional" coverage not subject to the compulsory provisions of the Financial Responsibility Act under N.C.G.S. § 20-279.21(g).

**Am Jur 2d, Automobile Insurance § 322.**

**Uninsured and underinsured motorist coverage: recoverability under uninsured or underinsured motorist coverage of deficiencies in compensation afforded injured party by tortfeasor's liability coverage. 24 ALR4th 13.**

Justice MEYER dissenting.

Justice LAKE joins in this dissenting opinion.

Justice WEBB dissenting.

Justice LAKE joins in this dissenting opinion.

APPEAL by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 103 N.C. App. 101, 404 S.E.2d 499 (1991), affirming the entry of summary judgment for the plaintiff by *Long, J.*, at the 14 June 1990 Session of Superior Court, FORSYTH County. Heard in the Supreme Court 11 February 1992.

*Womble Carlyle Sandridge & Rice, by Richard T. Rice and Clayton M. Custer, for plaintiff-appellees.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Paul D. Coates and ToNola D. Brown, for defendant-appellant.*

FRYE, Justice.

Defendant Nationwide Mutual Insurance Company (Nationwide) presents two distinct issues on this appeal: (1) whether the Court of Appeals erred in holding that intrapolicy stacking is permitted in determining an insurer's limit of liability when the injured party is the minor daughter of the named insured; and (2) whether the tortfeasor's vehicle in which the minor plaintiff was riding when injured was an "underinsured highway vehicle," even though the liability coverage on the vehicle was equal to the liability limit under the Nationwide policy issued to the minor's parents. As to the first issue, we hold that the Court of Appeals did not err. We answer the second question in the affirmative, thus agreeing with the implicit holding of both the trial court and Court of Appeals.

Plaintiff Michelle K. Harris, the minor daughter of plaintiffs David and Ellen Harris, was injured in an automobile accident while traveling as a passenger in a vehicle owned by George Wayne Faust and operated by his daughter, Mary Elizabeth Faust, on 25 September 1989. The Faust vehicle was insured under a State Farm Insurance Company policy having liability limits of $100,000/$300,000. Michelle's medical expenses alone exceeded $102,000. At the time of the accident, Michelle's parents owned three vehicles insured under a single policy issued by Nationwide. This policy provided uninsured and underinsured motorist (UM/UIM) coverage of $100,000 per person for each vehicle insured. Plaintiffs paid to defendant separate premiums on each vehicle for UM/UIM coverage.

Plaintiffs filed this action for declaratory judgment on 2 March 1990, requesting that the trial court determine whether Michelle was entitled to stack the UIM coverages of three separate vehicles covered under the single policy issued by Nationwide. Plaintiffs subsequently moved for judgment on the pleadings or, in the alternative, summary judgment. Nationwide also made a motion for summary judgment pursuant to N.C. R. Civ. P. 56(b). In a judgment dated 14 June 1990, the trial court granted plaintiffs' motion for summary judgment and denied Nationwide's motion. The trial court's judgment included the following significant "findings of fact":

**HARRIS v. NATIONWIDE MUT. INS. CO.**

[332 N.C. 184 (1992)]

2. That the coverage for the three vehicles listed in the insurance policy referred to in the Complaint and issued by the defendant to the plaintiffs David A. Harris and Ellen E. Harris can be stacked so as to provide underinsured motorist coverage in the amount of $300,000 for injuries and damages sustained by the plaintiffs arising out of the accident described in the Complaint, and that the underinsured motorist coverage available to Michelle Harris is identical to the coverage available to David A. Harris and Ellen E. Harris under the insurance policy issued by defendant;

3. That the defendant's limit of liability to the plaintiff shall be $300,000, less the primary coverage paid to the plaintiffs pursuant to N.C.G.S. § 20-279.21(b)(4).

The Court of Appeals affirmed the trial court's decision, with Judge Greene dissenting. *Harris v. Nationwide Mut. Ins. Co.*, 103 N.C. App. 101, 404 S.E.2d 499 (1991). Nationwide appealed to this Court based on Judge Greene's dissent, and we granted its petition for discretionary review as to additional issues. *Harris v. Nationwide Mut. Ins. Co.*, 329 N.C. 788, 408 S.E.2d 521 (1991).

We address Nationwide's second issue first. Nationwide contends that the Faust vehicle in which the minor plaintiff was riding when injured was not an "underinsured highway vehicle" because the $100,000 per person liability limit on the Faust vehicle was equal to the per person liability/UIM limit of $100,000 in plaintiffs' Nationwide policy.[1] UIM coverage is deemed to apply when "all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance or use of the **underinsured highway vehicle** have been exhausted." N.C.G.S. § 20-279.21(b)(4) (1989) (emphasis added). Therefore, the determination of whether the tortfeasor's (Faust) vehicle is an underinsured highway vehicle is crucial in determining if UIM coverage is available under the Nationwide policy.

The threshhold question, then, is whether the tortfeasor's vehicle is an "underinsured highway vehicle" as the term is used in N.C.G.S. § 20-279.21(b)(4). An "underinsured highway vehicle" is defined as

---

1. Under N.C.G.S. § 20-279.21(b)(4), as it existed at the time of the accident, the UIM limits in any given policy were identical to the liability limits. N.C.G.S. § 20-279.21 was amended by the General Assembly in 1991. 1991 N.C. Sess. Laws ch. 646, §§ 1-4. However, the amendments do not affect claims arising or litigation pending prior to the amendments. *Id.* § 4. Unless otherwise noted, any citation

HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the **applicable limits of liability under the owner's policy** . . . .

N.C.G.S. § 20-279.21(b)(4) (1989) (emphasis added). In essence, defendant's second issue can be divided into two subissues: first, whether the proper comparison outlined in the statute above is between the tortfeasor's liability coverage and plaintiff's liability coverage or between the tortfeasor's liability coverage and the plaintiff's UIM coverage;[2] and second, if the proper comparison is to plaintiff's UIM coverage, whether the UIM coverage limits can be stacked to determine if the tortfeasor's vehicle is an "underinsured highway vehicle."

[1]   The resolution of these subissues hinges upon the interpretation of the phrase "applicable limits of liability under the owner's policy." We note that this language is found in N.C.G.S. § 20-279.21(b)(4), which deals exclusively with underinsured motorist coverage. While it may be argued that "limits of liability" refers to the limits under the plaintiff's liability coverage,[3] we are convinced that the limits referred to are the limits of liability under plaintiff's UIM coverage. Following an automobile accident, a tortfeasor's liability coverage is called upon to compensate the injured plaintiff, who then turns to his own UIM coverage when the tortfeasor's liability coverage is exhausted. In this situation, the injured plaintiff's liability coverages are not applicable to the accident and a comparison to the plaintiff's liability coverage is inappropriate. Taken in context with the surrounding subsection on underinsured motorist coverage, the "liability limits" referred to are clearly those under the UIM coverage portion of the owners' policy. Therefore, the limits of liability in the instant case are the limits of liability under the UIM coverage portion of the minor plaintiff's parents' policy and not under the liability portion of their policy.

---

to or discussion of N.C.G.S. § 20-279.21 in this opinion will be with respect to that version of the statute in effect at the time of the accident.

2. This same issue is before us in another case, *Amos v. N.C. Farm Bureau Mut. Ins. Co.*, 103 N.C. App. 629, 406 S.E.2d 652, *disc. rev. allowed*, 330 N.C. 193, 412 S.E.2d 52 (1991). Because this issue affects both of these cases, and is implicit in all UIM cases, we will decide it here.

3. This is North Carolina Farm Bureau Mutual Insurance Company's contention in *Amos v. N.C. Farm Bureau Mut. Ins. Co.*, 103 N.C. App. 629, 406 S.E.2d 652.

## HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

The Financial Responsibility Act, of which N.C.G.S. § 20-279.21(b)(4) is a part, is a "remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton v. Aetna Casualty & Surety Co.,* 325 N.C. 259, 265, 382 S.E.2d 759, 763, *reh'g denied,* 325 N.C. 437, 384 S.E.2d 546 (1989). A treatise on North Carolina automobile insurance law discusses the concept of UIM coverage and concludes that it "allows the insured to recover when the tortfeasor has insurance, but his coverage is in an amount insufficient to compensate the injured party for his full damages." J. Snyder, Jr., *North Carolina Automobile Insurance Law* § 30-1 (1988). Our interpretation of the statute is in accord with this approach.

Another noted treatise on automobile insurance has evaluated the various legislative definitions of an "underinsured motor vehicle" and has classified them in three categories which demonstrate the different approaches used by the various states for determining whether a tortfeasor is underinsured. 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 35.2 (2d ed. 1990). "There are three primary types of comparisons which are defined in these statutes: determinations based on comparisons of the *tortfeasor's liability insurance* (1) with the amount of *underinsured* motorist insurance, (2) with the amount of *uninsured* motorist insurance, or (3) with the *damages* or *injuries* sustained by the insured." *Id.* (emphases in original). Noticeably absent from these categories is any comparison of the tortfeasor's liability insurance with the amount of a plaintiff's liability insurance. We have found no authority which leads us to believe that the determination of whether a tortfeasor's vehicle is an "underinsured highway vehicle" requires a comparison between the tortfeasor's liability insurance and the plaintiff's liability coverage. "[T]he obligation to provide uninsured motorist coverage was tied to liability coverage to facilitate its purchase and to determine the persons who must be provided with uninsured motorist coverage, and not to provide insurers a means of limiting the coverage to situations in which liability coverage would be in effect." *Smith v. Nationwide Mutual Ins. Co.,* 328 N.C. 139, 148-49, 400 S.E.2d 44, 50 (quoting *Bradley v. Mid-Century Ins. Co.,* 409 Mich. 1, 35-36, 294 N.W.2d 141, 151 (1980)), *reh'g denied,* 328 N.C. 577, 403 S.E.2d 514 (1991).

[2] Having decided the proper comparison in determining whether a tortfeasor's vehicle is an "underinsured highway vehicle," we now address the question of whether UIM coverages may be stacked

when making this determination. Anticipating this Court's rejection of a liability to liability comparison argument, Nationwide contends that, even under a liability to UIM coverage comparison, the automobile owned and operated by Faust (the tortfeasor) is not an "underinsured highway vehicle" as defined by N.C.G.S. § 20-279.21(b)(4). Nationwide argues that, as a threshold issue, plaintiffs must show that the limits of UIM coverage under their policy with Nationwide exceed the limits of liability coverage under Faust's policy with State Farm. Thus, Nationwide contends that the comparison between the tortfeasor's liability limit and the plaintiff's UIM limit must occur prior to the stacking of any UIM coverage. As such, Nationwide argues that in cases like the instant case, where the tortfeasor's liability coverage is equal to the plaintiff's UIM limit before stacking, the plaintiff fails to meet the "threshold" definition of an underinsured highway vehicle, and there is no underinsured motorist coverage to stack. We reject this contention.

When examining cases to determine whether insurance coverage is provided by a particular automobile insurance policy, careful attention must be given to the type of coverage, the terms of the policy, and the relevant statutory provisions. *Smith*, 328 N.C. at 142, 400 S.E.2d at 47. In the present case, the type of coverage sought by plaintiffs is UIM coverage. The policy in question is a personal automobile insurance policy issued to the parents of the minor plaintiff. This Nationwide policy includes UIM coverage, but Nationwide argues that the policy prohibits "stacking" in determining whether a vehicle is an "underinsured motor vehicle."

The Nationwide policy in question defines an underinsured motor vehicle in the "uninsured/underinsured motorists coverage" endorsement as follows:

A land motor vehicle . . . of any type . . . [t]o which . . . the sum of the limits of liability bonds and insurance policies applicable at the time of the accident is:

a. equal to or greater than the minimum limit specified by the financial responsibility law of North Carolina; and

b. less than the **limit of liability for this coverage.**

(Emphasis added.) Nationwide notes that the word "limit" in this definition is singular, and therefore argues that the policy refers to a singular limit. As such, Nationwide contends that "the singular limit of the policy with defendant ($100,000) must be greater than

the liability coverage of the tortfeasor in order for the tortfeasor's vehicle to qualify as underinsured." We recognize that our Court of Appeals has treated similar language in the medical payments provision of automobile insurance policies as prohibiting stacking of medical payments. *See, e.g., Tyler v. Nationwide Mut. Ins. Co.*, 101 N.C. App. 713, 401 S.E.2d 80 (1991). Assuming, *arguendo*, that the provision in the Nationwide policy would prohibit stacking to determine the "limit of liability," we must then consider the statutory provisions relevant to this issue.

As discussed above, the statute provides that an "underinsured highway vehicle" is

> a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than **the applicable limits of liability under the owner's policy.**

N.C.G.S. § 20-279.21(b)(4) (emphasis added). The statute does not define "the applicable limits of liability under the owner's policy." While Nationwide interprets "the applicable limits of liability" as meaning a single limit of UIM coverage under the owner's policy, this language may also be interpreted to mean the sum of all UIM limits under the policy which are applicable to the particular claim.

When interpreting a statute, the cardinal principle is to ensure that the purpose of the legislature is accomplished. *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). Accordingly, "a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish." *Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 82, 347 S.E.2d 824, 828 (1986). Also, "[i]t is presumed that the legislature acted in accordance with reason and common sense and that it did not intend an unjust or absurd result" when it enacted the particular legislation. *King v. Baldwin*, 276 N.C. 316, 325, 172 S.E.2d 12, 18 (1970) (citations omitted). Furthermore, "the statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently." *Shelton*, 318 N.C. at 82, 347 S.E.2d at 828.

Applying these rules to the language "applicable limits of liability," we are convinced that the "applicable limits" are the sum

HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

of all UIM coverages provided in the Nationwide policy which are applicable to the plaintiff's claim. Initially, we note that the statute refers to "applicable limits of liability." Given the natural and ordinary meaning of the plural form of the word limit, we are convinced that, with reference to a single policy, "applicable limits" refers to all available UIM limits under the policy. Furthermore, we find that this result is consistent with our previous decision in *Sutton*. In *Sutton*, we held that stacking is required by the provisions of N.C.G.S. § 20-279.21(b)(4) when determining an insured's recovery under the UIM provisions of an automobile insurance policy. *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763. To deny an insured access to the recovery approved in *Sutton* by prohibiting stacking of UIM coverages in determining whether the tortfeasor's vehicle is an "underinsured highway vehicle" would be inconsistent with the rationale of *Sutton* and the purpose of the Financial Responsibility Act.

Thus, we conclude that the language of N.C.G.S. § 20-279.21(b)(4) allows the stacking of an insured's UIM coverages in determining whether a tortfeasor's vehicle is an "underinsured highway vehicle." The statute compares the aggregate liability coverage of the tortfeasor's vehicle to the applicable limits of liability under the owner's policy, meaning the aggregate or stacked UIM "limits" under the policy. To the extent that the provisions of a statute and the terms of the policy conflict, the provisions of the statute will prevail. *Id.* at 263, 382 S.E.2d at 762; *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977). Because the tortfeasor's aggregate liability coverage is less than the aggregate limits of liability under the UIM provisions of the Nationwide policy, the tortfeasor's vehicle in this case qualifies as an underinsured highway vehicle. In the language of the statute, the Faust vehicle was an "underinsured highway vehicle" because it was "a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds [$0] and insurance policies [$100,000] applicable at the time of the accident [was] less than the applicable limits of liability under the owner's policy [$300,000]." N.C.G.S. § 20-279.21(b)(4) (1989).

[3] Nationwide next argues that even if this Court rejects its "threshold" argument and allows stacking in determining whether a vehicle is an "underinsured highway vehicle," the Court of Appeals nevertheless erred in holding that a nonowner family member

is entitled to such stacking. Nationwide relies upon the following portion of the statute:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the **owner's** underinsured motorist coverages provided in the **owner's** policies of insurance; *it being the intent of this paragraph to provide to the* **owner**, in instances where more than one policy may apply, *the* **benefits** *of all limits of liability of underinsured motorist coverage under all such policies* . . . .

N.C.G.S. § 20-279.21(b)(4) (emphasis added). Nationwide contends that the statute's repeated references to "owner" and "owner's policy" demonstrate that only the owners of the policy or vehicle may avail themselves of benefits under the statute, such as the intrapolicy stacking approved in *Sutton*. Thus, Nationwide argues, because Michelle is not the owner of the policy or vehicle, she is not entitled to stack UIM coverages.

Assuming, without deciding, that Nationwide is correct in interpreting the statute to mean that only "owners" are intended to benefit from the stacking of UIM coverages, there is no factual dispute that Mr. and Mrs. Harris "benefit" when their child Michelle is allowed to stack. To accept Nationwide's argument would be to say that the legislature intended for Michelle's parents, the policy owners, to benefit financially from their UIM coverage when **they** are injured by an underinsured motorist, but did not intend for them to benefit financially when their minor daughter, a member of their household, is injured by an underinsured motorist. Clearly, the legislature "did not intend [such] an unjust or absurd result." *See King*, 276 N.C. at 325, 172 S.E.2d at 18.

When one member of a household purchases first-party UIM coverage, it may fairly be said that he or she intends to protect all members of the family unit within the household. The legislature recognized this family unit for purposes of UIM coverage when it defined "persons insured" of the first class as "the named insured and, while resident of the same household, the spouse of any named insured and relatives of either . . . ." *See Bass v. North Carolina Farm Bureau Mut. Ins. Co.*, 332 N.C. 109, 418 S.E.2d 221 (1992) (quoting *Crowder v. North Carolina Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 554, 340 S.E.2d 127, 129, *disc. rev. denied*, 316

N.C. 731, 345 S.E.2d 387 (1986)). These persons insured of the first class are protected, based on their relationship, whether they are injured while riding in one of the covered vehicles or otherwise. *See id.* Certainly, the policy owner "benefits" when a spouse or family member residing in his or her household can stack UIM coverages. We conclude that the principles enumerated in *Sutton* which allow intrapolicy stacking when the owner is injured also allow intrapolicy stacking of UIM coverages when the injured party is a person insured of the first class.

The facts of this case demonstrate perfectly the logical reasoning behind allowing a member of the family unit and a person insured of the first class to stack UIM coverages. Because of her minority status, Michelle was under no duty to honor any contract of insurance she might have purchased on her own. 3 Robert E. Lee, *North Carolina Family Law* § 270 (4th ed. 1981). Therefore, Michelle was dependent on her parents for insurance coverage. Also, since Michelle was a minor at the time of the accident, it was her parents' duty to support her to the best of their abilities. *See id.* § 229; N.C.G.S. § 50-13.4(b) (1989). Purchasing insurance to benefit their daughter Michelle is an example of such support. By discharging their duty of support and protecting their daughter, the Harrises plainly "benefit" by limiting their out-of-pocket expenses, as well as increasing their peace of mind. Therefore, we hold that Michelle, as a nonowner family member living in the same household as the named insured, is entitled to stack UIM coverages under her parents' policy with Nationwide.

Nationwide also contends that our decision in *Smith* supports its argument that intrapolicy stacking should not be allowed in the instant case. We find this argument unconvincing. Nationwide argues that this Court in *Smith* rejected intrapolicy stacking for nonowner family members and allowed only interpolicy stacking. We disagree. Whether intrapolicy stacking is permissible for a nonowner family member was not at issue in *Smith*, and we confined our decision to the interpolicy stacking issue presented on appeal. Therefore, *Smith* should not be read to reject intrapolicy stacking, an issue not before the Court in that case.

[4] Nationwide further argues that stacking multiple vehicles on one policy by a nonowner is "excess" or "additional" coverage within the meaning of N.C.G.S. § 20-279.21(g), and therefore not subject to the compulsory provisions of the Financial Responsibility Act.

HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

We rejected this argument in *Sutton*; we reject it again today. *Sutton*, 325 N.C. at 268, 382 S.E.2d at 765.

We hold that intrapolicy stacking of UIM coverages is permissible when determining whether the tortfeasor's vehicle is an "underinsured highway vehicle." We further hold that the tortfeasor's vehicle in this case qualifies as an underinsured highway vehicle, since the plaintiff's aggregate UIM coverages exceed the aggregate liability coverage of the tortfeasor. We also hold that the minor plaintiff, as a nonowner family member living in the same household as the named insured, is entitled to stack UIM coverages in her parents' policy in determining Nationwide's limit of liability. For the reasons stated herein, the decision of the Court of Appeals, which affirmed the judgment of the trial court, is affirmed.

Affirmed.

Justice MEYER dissenting.

The majority errs in two major respects. First, it errs in holding that the tort-feasor's vehicle is an "underinsured highway vehicle" within the meaning of the statute and the language of the policy of insurance in question. It further errs in holding that the minor plaintiff, a nonowner, is entitled to intrapolicy stack UIM coverages in determining Nationwide's limit of liability under the policy.

I.

I disagree with the majority's adoption of Judge Greene's conclusion, in part I of his dissent below, that the tort-feasor's vehicle here qualifies as an underinsured vehicle. I concur completely with the dissent of Justice Webb, in which he concludes that the plain language of the statute requires a comparison of *liability coverages* to determine whether there is underinsured motorist coverage.

N.C.G.S. § 20-279.21(b)(4) requires insurers to provide insureds with UIM coverage, affording their insureds additional compensation when injured by an "underinsured highway vehicle." "Underinsured highway vehicle" is defined by that same section as "a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the *applicable limits of liability under the owner's policy*." N.C.G.S. § 20-279.21(b)(4) (1989) (subsequently amended 1991)

HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

(emphasis added). Thus, in determining whether a "person insured" is entitled to UIM benefits, it must first be determined whether the vehicle at fault for the insured's injuries was "underinsured." N.C.G.S. § 20-279.21(b)(4) provides that this determination is to be made by comparing "the sum of the limits of liability" insurance for the at-fault vehicle with the "applicable limits of liability under the owner's policy." Only if the at-fault vehicle's *liability* insurance is less than the applicable limits of the *liability* insurance under the owner's policy is the injured insured entitled to UIM benefits. This interpretation fully comports with the General Assembly's purpose of offering the added protection of UIM coverage only to insureds who have provided to third persons protection greater than that required by law.

Having compared the liability coverage of the two vehicles at issue here, it is evident to me that plaintiff was not injured by an underinsured highway vehicle within the meaning of N.C.G.S. § 20-279.21(b)(4), and plaintiff is therefore not entitled to the UIM benefits under the Nationwide policy. To say, as does the majority, that plaintiff is entitled to UIM benefits as a result of this accident completely ignores the fact that the applicable limits of liability under the Nationwide policy are equal to the liability insurance on the at-fault vehicle, and therefore the at-fault vehicle is not underinsured within the meaning of N.C.G.S. § 20-279.21(b)(4).

Even if the statute is read to require a comparison of the owner's UIM coverage (before stacking) to the tort-feasor's threshold liability coverage for one person under the policies in question here, the coverages are equal. Since the tort-feasor's limit of liability insurance is equal to (not less than) the Nationwide underinsured limit before stacking, the plaintiff here fails to meet the threshold definition of an underinsured highway vehicle, and there is no underinsured motorist coverage to stack.

II.

Even if I agreed with the majority that the tort-feasor's vehicle here was an underinsured vehicle, both the language of the policy and the statute prohibit Michelle K. Harris from intrapolicy stacking the UIM coverages to determine Nationwide's limit of liability. This was the conclusion reached by Judge Greene in part II of his dissent below. With only minor changes in his language, I reiterate his reasoning with regard to both the provision of the policy and the statute.

HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

## POLICY

The "Uninsured/Underinsured Motorists Coverage" endorsement in the insurance policy provides in pertinent part:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability for your or a **family member's** injuries shall be the sum of the limits of liability for this coverage under all such policies.

In *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991), this Court read this policy language to allow "the stacking of UIM coverages for a family member when the family member is covered by more than one policy issued to the named insured." *Id.* at 146, 400 S.E.2d at 49. However, the unambiguous language of the policy *sub judice* prevents stacking of the UIM coverages contained in it.

The above endorsement language requires two or more policies before stacking is allowed by a family member. Here, Michelle Harris was covered by only one policy. This interpretation becomes irrefutable in light of the policy definition of "limit of liability," which limits the defendant's liability for UIM coverage to $100,000 "regardless of the number of . . . [v]ehicles or premiums shown in the Declarations." Therefore, the endorsement language, read in connection with the "limit of liability" provision, prohibits the stacking by a family member of multiple UIM coverages contained in a single policy.

## STATUTE

Whether under the statute a nonnamed insured, such as Michelle Harris, is entitled to stack UIM coverages to determine the insurer's limit of liability is an issue that has not been addressed by this Court. In *Sutton v. Aetna Casualty & Surety Co.*, the plaintiff injured party was the policyholder (owner) and named insured of all of the policies of insurance that the Court allowed to be stacked. *Sutton*, 325 N.C. 259, 261-62, 382 S.E.2d 759, 761, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). When presented with a case where the injured party was not the policyholder, this Court refused to apply the statutory analysis used in *Sutton* to determine the issue of stacking of UIM coverages. *Smith*, 328 N.C. at 151-52, 400 S.E.2d at 52. Instead, in *Smith*, this Court allowed stacking, not under the provisions of the statute, but *under the terms of the policy. Id.*

HARRIS v. NATIONWIDE MUT. INS. CO.

[332 N.C. 184 (1992)]

The UIM statute provides in pertinent part:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the *owner's underinsured motorist coverages* provided in the *owner's policies of insurance; it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply,* the benefit of all limits of liability of underinsured motorist coverage under all such policies: Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. 58-40-15(9) and (10).

N.C.G.S. § 20-279.21(b)(4) (emphasis added). The statute is unambiguous in its language that only the "owner" is allowed "the benefit of all limits of liability of underinsured motorist coverage under all such policies." In other words, only the "owner" can stack underinsured motorist's "coverages and policies." *See Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (statute allows stacking of coverages and policies). Unlike the case at bar, in *Sutton*, the plaintiff was the owner of both the policies of insurance and the insured vehicles. The statute reference to "owner," in context, refers to the owner of the policies or policy of insurance containing underinsured motorist coverages. *See* N.C.G.S. § 20-4.01(26) (Supp. 1991) (unless context of statute requires a different definition, definition of words in N.C.G.S. § 20-4.01 applies to statute). Therefore, under the statute, Michelle Harris, who is not the owner of the policy in question, is not allowed to stack the underinsured motorist coverages available on the policy of insurance issued by the defendant Nationwide to Michelle's parents. I find this reasoning entirely convincing.

The statute *requires* UIM stacking for owners only. However, it also makes an express provision for coverage "in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this Article." N.C.G.S. § 20-279.21(g) (1989). Hence, if a policy provided nonrequired coverage for nonowners, such as intrapolicy stacking, such coverage would be "additional coverage" as that term is contemplated by the Financial Responsibility Act. While stacking for owners is required, nonowners obtain more coverage as "additional" or "excess" coverage, which is allowed by N.C.G.S. § 20-279.21(g). To the extent that a nonowner

has additional or excess coverage, the excess amounts represent voluntary coverage that is not subject to the compulsory provisions of the statute. *Id.* Stacking multiple vehicles on one policy by a nonowner is "in addition to" the coverage required by the terms of N.C.G.S. § 20-279.21(b)(4).

In the case *sub judice*, Michelle Harris is neither the owner of the policy at issue nor of the vehicles on the policy. The UIM statute does not change the antistacking language of the policy to require that Michelle be allowed to intrapolicy stack the coverages on her parents' policy.

The explicit language of the statute is: "It being the intent of this paragraph to provide to the *owner* . . . the benefit of all limits of liability . . . ." N.C.G.S. § 20-279.21(b)(4) (emphasis added). Disregarding completely the explicit language of the statute and the policy as to who is an "owner" of the policy, the majority permits a nonowner to intrapolicy stack UIM coverage because, by doing so, the owners would "benefit financially when their minor daughter, a member of their household, is injured by an underinsured motorist." Resorting to the question of which interpretation of a statute or contract of insurance will result in the greater financial benefit as opposed to the plain words of the statute and the policy is completely unacceptable to me.

I now address two other matters that I believe merit consideration: the majority's disregard of the recent legislative amendment to the statute in question, prohibiting intrapolicy stacking, and the public policy reasons for not allowing stacking under the facts of this case.

This Court should not read the present subsection (b)(4) expansively to allow intrapolicy stacking in light of the recent legislative amendment to the statute. *See* 1991 N.C. Sess. Laws ch. 646, § 2. The amended statute contains the following provision:

The underinsured motorist limits applicable to any one motor vehicle under a policy shall not be combined with or added to the limits applicable to any other motor vehicle under that policy.

N.C.G.S. § 20-279.21(b)(4) (Supp. 1991). Although the amendment to the statute is inapplicable to this case by reason of its effective date, it should nevertheless be considered by this Court as support for the proposition that the legislature never intended intrapolicy

stacking even under the present statute. Unless they expressly say so, amendments to statutes are not necessarily clarifications of legislative intent. Nevertheless, the fact that the legislature has amended N.C.G.S. § 20-279.21(b)(4) since the accident in this case to eliminate intrapolicy stacking is some additional evidence that the statute's general purpose, which has not been changed, is best served when the statute is interpreted so as not to extend stacking privileges to all covered or insured persons. *See Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 225, 376 S.E.2d 761, 765 (1989). This recent amendment, at the very least, should serve to curb any further expansion of the category of persons who are allowed to stack coverages of multiple vehicles on a single policy under the present statute.

The majority makes the point that separate UIM premiums are charged for each vehicle covered under a single policy. A premium is charged for each covered vehicle because of the increased risk of all of the insured vehicles being involved in an accident or accidents during the same policy term. Several motor vehicles belonging to one household can be, and frequently are, on the road at the same time, thereby justifying separate premiums for coverage on each vehicle due to the increased exposure of the several vehicles, as opposed to a single vehicle, being involved in separate accidents. A treatise on insurance law and practice is instructive on this point:

A few of the decisions adhering to the rule against the stacking, or accumulation of UM coverages, use the correct reasoning. That is, the actual exposure of an insurer is multiplied by the number of vehicles, since different persons will be driving them upon separate occasions and the risk is thereby multiplied, so that separate coverage must be carried upon each whenever that particular vehicle is used.

Although some courts . . . pay considerable attention to policy language, actually the intent of most policies is reasonably clear. This is true of the "each person" proviso in the insuring agreements, irrespective of the number of vehicles insured. There is no rule which forbids a single insurer, ordinarily, from providing against the tacking, or stacking, of the coverages available to the several vehicles of a single insured. Nor is this considered to be against public policy, if it at least meets the minimum amount required by statute.

**HARRIS v. NATIONWIDE MUT. INS. CO.**

· [332 N.C. 184 (1992)]

8C John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 5106, at 517 (1981) (footnotes omitted). The treatise further states:

> If it is not reasonable to argue for a doubling or tripling of liability limits when there is a single policy owner, and a single company, then it is not reasonable to urge such a position for uninsured motorist coverages. Yet . . . the majority of courts have confused themselves upon this issue, feeling that unless they double up such UM coverage, the insurer somehow receives a windfall, since it charges a separate premium for each coverage as it applies to a separate automobile.
>
> Let us analyze this reasoning, for a moment. If there were but a single insured, and only he ever drove an automobile, obviously he can drive only one vehicle at a time and the reasoning of such courts might then be logical. But, in considering basic underwriting and the actuarial computation of rate structures, we must take into consideration the customary procedures of mankind. Automobile policies are now written so as to afford liability protection not only to the named insured, who is usually the owner, but to members of his family, perhaps persons residing in the same household, and — with a few exceptions — anyone operating with the permission of the named insured or adult members of his household. When it comes to UM coverages, we have a like multiplication of exposure, since we have classes of risk, including all of the persons stated above, and pedestrians as well, with benefits granted in many circumstances when one may be in another vehicle or even upon the highway.
>
> When the insured then owns more than a single vehicle, almost always it is with the contemplation that the second, or third, vehicles will be operated by others. And those others may, also, if injured by an uninsured motorist, expose the insurer to loss under that aspect of the contract.
>
> Now it could reasonably be argued that an insured owning several automobiles could insure only one of them for liability, or for collision, or comprehensive, damages — yet collect as to any loss inflicted by, or upon, any of those vehicles he elected not to insure. Yet this is precisely the result for which policyholders, or their counsel, contend under UM coverages and which has been upheld repeatedly by the courts. Similarly,

it is no more logical to double, or triple, a single limit of UM coverage, the amount of which the insured deliberately selected, and tender it free to the insured.

We may summarize the situation where there is a single policy owner, single company, and multiple vehicles by saying that the proper result is: "What you buy is what you get—and no more." It is time for those courts, which have been so generous with the funds of others, to take a new look at this problem.

*Id.* § 5101, at 449-51 (footnotes omitted).

Another commonly made argument is also relied upon by the majority, as it was by Judge Greene in part I of his dissent, with which I have previously stated I disagree. Judge Greene wrote:

In *Sutton*, our Supreme Court held that the statute should be construed to prevent the " 'anomalous situation that an insured is better off—for purposes of the underinsured motorist coverage—if separate policies were purchased for each vehicle.' " [325 N.C.] at 267, 382 S.E.2d at 764 (citation omitted).

To construe "applicable limits of liability under the owner's policy" to be the amount of UIM coverage on any one vehicle shown in the policy declarations, here $100,000, would result in an anomalous situation where the insured would be better off had he purchased separate policies for each vehicle. If separate policies had been purchased, providing the same coverage on each of the three vehicles, the "limits of liability" under the UIM endorsement would have been $300,000.

*Harris v. Nationwide Mut. Ins. Co.*, 103 N.C. App. 101, 107, 404 S.E.2d 499, 503 (1991) (Greene, J., dissenting).

As a result of hindsight gained since this Court's decision in *Sutton*, I now question whether I voted correctly to allow stacking in that case. As the record in this case reveals, there may indeed be adequate justification for treating the two situations differently. I am now convinced that this is not necessarily an anomalous result, since different premiums are charged under these two different circumstances. When separate policies are purchased, the premiums paid are typically higher to cover the increased risk assumed by the insurer. When multiple vehicles are covered on

a single policy, the premium is generally less because multivehicle discounts are provided to the policyholders.

In the policy issued by Nationwide to the Harrises, the first vehicle has a total premium of $289.60, whereas the second vehicle only has a premium totalling $131.30, as does the third vehicle. This discount is noted on the declarations page as "discounts applied," referring to "multi car."

Automobile insurance, although regulated by statute, is still governed by contract law, where private parties are allowed to determine their respective rights as long as their private agreement does not conflict with the applicable statutory provisions. An insurer accepts a specifically defined risk in exchange for an agreed upon premium amount that adequately compensates the insurer for the risk being assumed. Thus, the premium is by necessity related to the risk being undertaken.

Accordingly, as the majority of this Court liberalizes the statute beyond its terms and allows more and more persons to stack multiple car coverages, the premiums charged by the insurers will inevitably be increased. Premiums will likely increase to the point (and indeed they may already have) where many insureds will begin to reject UIM coverage. This result can only be detrimental to the public good in the long run, as motorists will begin to carry less and less protection.

The issue becomes not how much coverage one can voluntarily choose to purchase, but rather, how much coverage will be required and at what costs to society and the consuming public. Continued expansion of UIM coverage may eventually have the unwanted and deleterious result of reducing an accident victim's ability to recover, thereby thwarting the remedial purpose for the Financial Responsibility Act.

For the reasons stated, I respectfully dissent from the majority opinion and vote to reverse the decision of the Court of Appeals.

Justice LAKE joins in this dissenting opinion.

Justice WEBB dissenting.

I dissent. The majority correctly says that the determination as to whether the tortfeasor, Mary Elizabeth Faust, is an under-

insured motorist depends on the interpretation of N.C.G.S. § 20-279.21(b)(4), which defines an "underinsured highway vehicle" as

> a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the owner's policy.

There is no question in this case that the "applicable limits of liability under the owner's policy" in this case would be $100,000 if Michelle Harris had been liable for injuries and damages suffered in the accident. This is the amount of insurance coverage which the tortfeasor had and she was not an underinsured motorist under N.C.G.S. § 20-279.21(b)(4).

The majority cites treatises dealing with the subject of uninsured motorist coverage and says that noticeably absent from any of them is a comparison of the tortfeasor's liability coverage with the plaintiff's liability insurance. Whatever the treatises may say, I believe the plain language of the statute requires a comparison of liability coverages to determine whether there is underinsured motorist coverage. The plain language requires us to hold that Mary Elizabeth Faust was not an underinsured motorist.

I vote to reverse the Court of Appeals.

Justice LAKE joins in this dissenting opinion.